# Tab 1

Don Springmeyer, Esq. (NSB No. 1021)
Bradley Schrager, Esq. (NSB No. 10217)
Royi Moas, Esq. (NSB No. 10686)
**WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP**
3556 E. Russell Road, 2nd Floor
Las Vegas, Nevada 89120
Telephone: (702) 341-5200
Facsimile: (702) 341-5300
dspringmeyer@wrslawyers.com
bschrager@wrslawyers.com
rmoas@wrslawyers.com

Robin L. Cohen, Esq. (*pro hac vice to be submitted*)
Marc T. Ladd, Esq. (*admitted pro hac vice*)
**MCKOOL SMITH, P.C.**
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York 10001
Tel: (212) 402-9400
Fax: (212) 402-9444
rcohen@mckoolsmith.com
mladd@mckoolsmith.com

*Attorneys for Plaintiff*
*JGB Vegas Retail Lessee, LLC*

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

JGB VEGAS RETAIL LESSEE, LLC,

Plaintiff,

v.

STARR SURPLUS LINES INSURANCE COMPANY,

Defendant.

Case No.: A-20-816628-B
Dept. No.: XIII

**ORDER DENYING DEFENDANT STARR SURPLUS LINES INSURANCE COMPANY'S MOTION TO DISMISS COMPLAINT WITHOUT PREJUDICE**

Case 1:20-cv-05122-WES-PAS Document 1-3 Filed 12/08/20 Page 3 of 106

**ORDER DENYING MOTION TO DISMISS**

On June 16, 2020, Plaintiff JGB Vegas Retail Lessee, LLC ("Plaintiff" or "JGB") filed its Complaint against Defendant Starr Surplus Lines Insurance Company ("Defendant" or "Starr") asserting four causes of action arising from its insurance claim for coverage under Policy No. SLSTPTY11245819 issued by Starr to JGB (the "Policy"). JGB alleged causes of action for: (1) Breach of Contract; (2) Declaratory Judgment; (3) Violations of the Nevada Unfair Claims Practices Act, N.R.S. 686A.310; and (4) Breach of the Covenant of Good Faith and Fair Dealing.[1] On September 16, 2020, Starr moved to dismiss the entire Complaint with prejudice ("Motion to Dismiss"). JGB filed its opposition to the Motion to Dismiss on October 14, 2020, and Starr filed a Reply in support of the Motion ("Reply") on November 4, 2020. Pursuant to its Minute Order on November 9, 2020, the Court vacated the scheduled hearing due to the continuing coronavirus situation and deemed the matter submitted on the briefs and under advisement as of November 12, 2020. The Court, having reviewed the pleadings and the parties' filings related to the Motion to Dismiss (excluding the supplemental filings of Plaintiff on October 26 and November 10, 2020, which have not been reviewed or considered by the Court), rules as follows.[2]

The Court first rejects the argument in Starr's Motion to Dismiss that the Policy designates New York as the sole and exclusive venue to resolve any and all disputes arising out of the Policy, and therefore, that Nevada is not the proper forum to adjudicate this action. As Starr contends, the Policy form "General Conditions" provides that "[a]ny suit, action, or proceeding against the COMPANY [*i.e.* Starr] must be brought solely and exclusively in a New York state court or a federal district court sitting within the State of New York." Policy, Property Coverage, General Conditions, § 12(e). However, at Endorsement #27, the Policy also includes a "Service of Process Clause Endorsement," which provides, in part, that:

---

[1] On July 23, 2020, Starr removed this action to the United States District Court for the District of Nevada, on the basis of diversity of citizenship. On September 1, 2020, the United States District Court entered the parties' stipulation and order to remand the action to this Court based on a lack of complete diversity between the parties.

[2] The Court provides no opinion regarding which state's law is applicable in denying Starr's Motion to Dismiss.

> In the event of failure of the Insurer to pay any amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Insurer's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek transfer of a case to another court as permitted by the laws of the United States or any state in the United States. It is further agreed . . . that [for] any suit instituted against the Insurer upon this policy, the Insurer will abide by the final decision of such court or of any appellate court in the event of an appeal.

Policy, Endt. 27. The Service of Process Clause Endorsement continues, that "pursuant to any statute of any state, territory, or district of the United States," Starr "designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute" as its agent for service of process. *Id.* The Court finds that there is a conflict between these two provisions and, as an endorsement, the Service of Process Clause Endorsement governs over the forum selection clause in the Policy's form. *See Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*, 88 F. Supp. 3d 1156, 1162-65 (S.D. Cal. 2015) (holding that the Service of Suit Endorsement "changed the original insurance agreement" that contained a forum selection clause and "unambiguously permits Plaintiff to bring suit in a forum of its choosing."); *Wayne Cnty. Airport Auth. v. Allianz Glob. Risks U.S. Ins. Co.*, No. 11-15472, 2012 WL 3134074, at *3 (E.D. Mich. Aug. 1, 2012) ("[Insurers] seek dismissal and enforcement of the forum selection clause that was bargained away. The [insurers] are not entitled to enforce the forum selection clause in the policy over that in the endorsement."). Moreover, Starr has failed to show that Nevada is an inconvenient forum to justify dismissal. *See* N.R.S. 13.050(2)(c); *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 131 Nev. 296, 300-07, 350 P.3d 392, 396-400 (2015). Accordingly, this action is properly within the jurisdiction of this Court, and Starr's Motion to Dismiss on forum is denied.

The Court next analyzes Starr's arguments for dismissal under NRCP 12(b)(5). When a court considers a motion to dismiss under NRCP 12(b)(5), the "court will recognize all factual allegations in [the] complaint as true and draw all inferences in its favor." *Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 227-28, 181 P.3d 670, 672 (2008). "A complaint need only set forth sufficient facts to demonstrate the necessary elements of a claim for relief so that the defending party has adequate notice of the nature of the claim and relief sought." *W. States Constr., Inc. v. Michoff*, 108

Nev. 931, 936, 840 P.2d 1220, 1223 (1992). Thus, the complaint "should be dismissed only if it appears beyond a doubt that [the plaintiff] could prove no set of facts, which, if true, would entitle [the plaintiff] to relief." *Buzz Stew*, 124 Nev. at 228, 181 P.3d at 672.

On the first cause of action, JGB states a ~~valid~~ claim for relief for breach of the Policy. The Policy's initial coverage grant provides that it "covers the property insured hereunder against all risks of direct physical loss or damage to covered property while at INSURED LOCATIONS occurring during the Term of this POLICY, except as hereinafter excluded or limited." Policy, Property Coverage, General Conditions, § 1; *see* Compl. ¶¶ 30-32. The Policy also provides certain "TIME ELEMENT" coverages for business interruption losses; the main section provides coverage for "[l]oss directly resulting from necessary interruption of the Insured's NORMAL business operations caused by direct physical loss or damage to real or personal property covered herein[.]" Policy, Business Interruption, § 1; *see* Compl. ¶¶ 33-40. Also included in the TIME ELEMENT COVERAGE is "Interruption by Civil or Military Authority."[3]

JGB's Complaint alleges the physical presence and known facts about the coronavirus, including that it spreads through infected droplets that "are physical objects that attach to and cause harm to other objects" based on its ability to "survive on surfaces" and then infect other people. Compl. ¶¶ 16-20. JGB also alleges that by March 11, 2020, COVID-19 was present at the Mirage casino, within one mile from JGB's Grand Bazaar Shops. *Id.* ¶ 21. JGB alleges that based on these facts and the location and characteristics of the Grand Bazaar Shops, that it was "highly likely that the novel coronavirus that causes COVID-19 has been present on the premises of the Grand Bazaar Shops, thus damaging the property JGB had leased to its tenants." *Id.* ¶ 26; *see also id.* ¶ 7. The Complaint also states that because the presence of COVID-19 at or near the Grand Bazaar Shops and

---

[3] The coverage part for "Interruption by Civil or Military Authority" provides that:

This POLICY is extended to include, starting at the time of physical loss or damage, the actual loss sustained by the Insured, resulting directly from an interruption of business as covered hereunder, during the length of time, not exceeding the number of days shown under TIME LIMITS stated in the Declarations, when, as a direct result of damage to or destruction of property within one (1) statute mile of an INSURED LOCATION by the peril(s) insured against, access to such described premises is specifically prohibited by order of civil or military authority.

Policy, Business Interruption, § 7.

Governor Sisolak's March 20, 2020 Order restricting and prohibiting access to non-essential business, the Grand Bazaar Shops were forced to close and the few restaurants that remained open were severely limited in their operations, resulting in significant losses. *Id.* ¶¶ 26-28.

The Court finds that JGB's Complaint sufficiently alleges losses stemming from the direct physical loss and/or damage to property from COVID-19 to trigger Starr's obligations under the property and TIME ELEMENT coverage provisions in the Policy, including coverage for general business interruption and Interruption by Civil or Military Authority. *See, e.g.*, *Studio 417, Inc. v. Cincinnati Ins. Co*., No. 20-cv-03127, 2020 WL 4692385, at *2, *4 (W.D. Mo. Aug. 12, 2020) (complaint alleged direct physical loss, because it alleged that the virus "is a physical substance," which "live[s] on" and is "active on inert physical surfaces," and that "it is likely that customers, employees, and/or other visitors to the insured properties were infected with COVID-19 and thereby infected the insured properties with the virus" and "the presence of COVID-19 'renders physical property in their vicinity unsafe and unusable'").[4]

Starr also moves to dismiss JGB's claim for breach of contract (and related claims) on the basis that any loss or damage suffered by JGB is nonetheless excluded by the Policy's "Pollution and Contamination Exclusion." Motion to Dismiss at 24-26; Reply at 24-27. The Pollution and Contamination Exclusion provides:

b. Pollution and Contamination Clause:

> This POLICY does not insure against loss or damage caused by or resulting from any of the following regardless of any cause or event contributing concurrently or in any other sequence to the loss:

1. contamination;
2. the actual or threatened release, discharge, dispersal, migration or seepage of POLLUTANTS at an INSURED LOCATION during the Term of this POLICY unless the release, discharge, dispersal, migration, or seepage is caused by fire, lightning, leakage from fire protective equipment, explosion, aircraft, vehicles, smoke, riot, civil commotion or vandalism. This POLICY does not insure off premises cleanup costs arising from any cause and the coverage afforded by this clause shall not be construed otherwise.

[4] *See also Optical Servs. USA/JCI v. Franklin Mut. Ins. Co*., No. BER-L-3681-20, 2020 WL 5806576 (N.J. Super. L. Aug. 13, 2020); *Blue Springs Dental Care, LLC v. Owners Ins. Co*., No. 20-cv-00383, 2020 WL 5637963 (W.D. Mo. Sept. 21, 2020).

Policy, Property Coverage, General Conditions, § 7(b). The Policy does not define "contamination," but defines "POLLUTANT or CONTAMINANTS" as:

> any solid, liquid, gaseous or thermal irritant or CONTAMINANT including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, virus, waste, (waste includes materials to be recycled, reconditioned or reclaimed) or hazardous substances as listed in the Federal WATER Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act, or as designated by the U.S. Environmental Protection Agency.

Policy, Property Coverage, General Conditions, § 13(T).

Starr contends that the Pollution and Contamination Exclusion clearly and unambiguously applies on its face to exclude JGB's claims. Reply at 24-25. As the insurer, Starr bears the burden to prove any clause excludes coverage. *See Nat'l Auto. & Cas. Ins. Co. v. Havas*, 75 Nev. 301, 303, 339 P.2d 767, 768 (1959). "[I]f an insurer wishes to exclude coverage by virtue of an exclusion in its policy, it must (1) write the exclusion in obvious and unambiguous language in the policy, (2) establish that the interpretation excluding covering under the exclusion is the only interpretation that could fairly be made, and (3) establish that the exclusion clearly applies to this particular case." *Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 164, 252 P.3d 668, 674 (2011) (citing *Alamia v. Nationwide Mut. Fire Ins. Co.*, 495 F. Supp. 2d 362, 367 (S.D.N.Y. 2007)); *see also Belt Painting Corp. v. TIG Ins. Co*., 100 N.Y.2d 377, 383 (2003) (stating "policy exclusions are given a strict and narrow construction"). Starr has not shown that it is unreasonable to interpret the Pollution and Contamination Exclusion to apply only to instances of traditional environmental and industrial pollution and contamination that is not at issue here,[5] where JGB's losses are alleged to be the result of a naturally-occurring, communicable disease. This is the case, even though the Exclusion contains the word "virus." *See, e.g.*, *Urogynecology Specialist of Fla. LLC v. Sentinel Ins. Co.*, No. 6:20-cv-1174, 2020 WL 5939172, at *4 (M.D. Fla. Sept. 24, 2020) ("Denying coverage for losses stemming from COVID-19, however, does not logically align with the grouping of the virus exclusion with other pollutants such that the Policy necessarily anticipated and intended to deny coverage for these

---

[5] *See, e.g.*, *Century Surety Co. v. Casino W., Inc.*, 130 Nev. 395, 398-401, 329 P.3d 614, 616-18 (2014); *Belt Painting*, 100 N.Y.2d at 383-88.

kinds of business losses."). Accordingly, the Court finds that the Pollution and Contamination Exclusion does not apply to exclude JGB's claims.

On the second cause of action for declaratory relief, for the reasons stated above (*supra* at 2-5), the Court finds that JGB's Complaint sufficiently alleges facts to state a claim upon which relief can be granted for declaratory relief under Nevada law. *See* N.R.S. 30.010 *et seq*. Accordingly, Starr's Motion to Dismiss this cause of action is denied.

On the third cause of action, an insurer violates the Unfair Claims Practices Act for, *inter alia*, "[m]isrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue" or "[f]ailing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear." N.R.S. 686A.310(1)(a) & (e). Regarding the fourth cause of action, "an implied covenant of good faith and fair dealing [is] in every contract." *Pemberton v. Farmers Ins. Exch.*, 109 Nev. 789, 792-93, 858 P.2d 380, 382 (1993). "[W]ith respect to the covenant of good faith and fair dealing . . . '[w]hen one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith.'" *Perry v. Jordan*, 111 Nev. 943, 948, 900 P.2d 335, 338 (1995) (citing *Hilton Hotels v. Butch Lewis Prods.*, 107 Nev. 226, 234, 808 P.2d 919, 923 (1991)); *see also Pemberton*, 109 Nev. at 793, 858 P.2d at 382 ("An insurer fails to act in good faith when it refuses 'without proper cause' to compensate the insured for a loss covered by the policy."); *D.K. Prop., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 92 N.Y.S.3d 231, 232-34 (App. Div. 1st Dep't 2019).

The Complaint alleges that Starr denied the claim, did so unreasonably, and did so with knowledge that denial was unreasonable. Compl. ¶¶ 10, 46, 61. JGB also alleged that Starr misrepresented the facts of the claim by asserting that "there [wa]s no mention of the [Nevada] orders having been issued because of physical loss or damage" and that it did "not appear that the [Nevada] orders in question prohibited access to the insured premises[.]" *Id.* ¶¶ 45-47. Moreover, JGB alleged that Starr misrepresented the scope of the Policy by citing the Pollution and Contamination Exclusion to apply to coverage, and by requiring that JGB be "physical prevent[ed]" from the premises in order to trigger the TIME ELEMENT coverages. *Id.* ¶¶ 48, 49, 52. Finally, JGB

alleged consequential damages from Starr's allegedly unreasonable denial of coverage. *See, e.g.*, *id.* ¶ 83. The Court finds that JGB's Complaint sufficiently alleges facts to state claims upon which relief can be granted for violation of the Nevada Unfair Claims Practices Act and for breach of the implied covenant of good faith and fair dealing.

Lastly, Starr's request to deny Plaintiff leave to amend the Complaint is denied as moot.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss **IS DENIED IN ITS ENTIRETY** without prejudice.

November 30, 2020.

Respectfully submitted,

WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP

*/s/ Don Springmeyer*
Don Springmeyer, Esq. (NSB No. 1021)
Bradley Schrager, Esq. (NSB No. 10217)
Royi Moas, Esq. (NSB No. 10686)
3556 E. Russell Road, 2nd Floor
Las Vegas, Nevada 89120
Telephone: (702) 341-5200
Facsimile: (702) 341-5300
dspringmeyer@wrslawyers.com
bschrager@wrslawyers.com
rmoas@wrslawyers.com

Robin L. Cohen, Esq. (*pro hac vice to be submitted*)
Marc T. Ladd, Esq. (*admitted pro hac vice*)
MCKOOL SMITH, P.C.
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York 10001
Tel: (212) 402-9400
Fax: (212) 402-9444
rcohen@mckoolsmith.com
mladd@mckoolsmith.com
*Attorneys for Plaintiff JGB Vegas Retail Lessee, LLC*

Approved/disapproved as to form

Approved/disapproved as to content

FORAN GLENNON PALANDECH PONZI & RUDLOFF PC

By: ______________________
Lee H. Gorlin (NSB No. 13879)
2200 Paseo Verde Parkway, Suite 280
Henderson, NV 89502
Telephone: (702) 827-1510
Facsimile: (312) 863-5099
lgorlin@fgppr.com

Amy M. Samberg (NSB No. 10212)
400 East Van Buren St., Suite 550
Phoenix, AZ 85004
Telephone: (602) 926-9880
Facsimile: (312) 863-5099
asamberg@fgppr.com

*Attorneys for Starr Surplus Lines Insurance Company*

# Tab 2

CN: 2020221232
SN: 12
PC: 7

The Honorable Michelle Szambelan

FILED
NOV 23 2020
Timothy W. Fitzgerald
SPOKANE COUNTY CLERK

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR SPOKANE COUNTY

| | |
|---|---|
| PERRY STREET BREWING COMPANY, LLC, a Washington limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>MUTUAL OF ENUMCLAW INSURANCE COMPANY, a Washington insurance company,<br><br>Defendant. | NO. 20-2-02212-32<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: COVERAGE GRANT** |

THIS MATTER came before the Court on Plaintiff's Motion for Partial Summary Judgment Re: Coverage Grant ("Motion"). The Court has duly considered the oral argument of the parties, the files and records herein, and the below-listed pleadings, papers, declarations, and exhibits submitted by the parties:

1. Plaintiff's Motion;
2. Declaration of Ben Lukes;
3. Declaration of John Cadagan;



GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

4. Defendant Mutual of Enumclaw Insurance Company's Opposition to Plaintiff's Motion for Partial Summary Judgment;

5. Declaration of Steven Caplow in Support of Defendant Mutual of Enumclaw Insurance Company's Opposition to Plaintiff's Motion for Partial Summary Judgment;

6. Plaintiff's Reply.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1. Plaintiff's Motion is GRANTED.

2. Pursuant to CR 56, the Court enters the following undisputed facts relevant to its subsequent conclusions of law.

3. Plaintiff Perry Street Brewing Company LLC ("PSBC") owns and operates a brewery and bar with dining business with its principal place of business located at 1025 S. Perry St. # 2, Spokane, WA 99202.

4. Defendant Mutual of Enumclaw Insurance Company ("MOE") is an insurer authorized to write, sell, and issue business insurance policies in Washington to policyholders, including PSBC.

5. MOE issued a businessowners policy and related endorsements ("the Policy") with Commercial Property Coverage.

6. PSBC's business property includes property owned and/or leased by PSBC and used by PSBC primarily for operating a brewery and bar with dining services.

7. On or about January 2020, the United States of America saw its first cases of persons infected by COVID-19, which has been designated a worldwide pandemic.



GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

8. In light of this pandemic, on February 29, 2020, Washington Governor Jay Inslee issued Proclamation 20-5, declaring a State of Emergency for all counties in the state of Washington as the result of COVID-19.

9. Thereafter, Governor Inslee issued a series of certain proclamations and orders affecting many persons and businesses in Washington, whether infected with COVID-19 or not, requiring certain public health precautions.

10. On March 13, 2020, Governor Inslee issued Proclamation 20-11, "Statewide Limits on Gatherings," which prohibited all gatherings of 250 people or more in all Washington counties, including Spokane County.

11. On March 16, 2020, Governor Inslee issued Proclamation 20-14, "Reduction of Statewide Limits on Gatherings," which prohibited all gatherings of 50 people or more in all Washington counties, including Spokane County, and further prohibited gatherings of fewer people unless organizers of those activities complied with certain social distancing and sanitation measures.

12. Also on March 16, 2020, Governor Inslee issued Proclamation 20-13, "Statewide Limits: Food and Beverage Services, Areas of Congregation," which prohibited the onsite consumption of food and/or beverages in a public venue, including restaurants, bars, or other similar venues in which people congregate for the consumption of food or beverages.

13. By order of Governor Inslee effective October 6, 2020, for counties in "Phase Two," including Spokane County, although some indoor dining is allowed, dining and consumption of beverages are still curtailed compared to pre-pandemic. For example, restaurant table group sizes remain limited, the number of diners is capped at no more than 50 percent of capacity, hours remain restricted, and bar counters remain closed. *See*



GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

https://www.governor.wa.gov/sites/default/files/COVID19%20Phase%202%20and%203%20Restaurant%20and%20Tavern%20Guidance.pdf?utm_medium=email&utm_source=govdelivery.

14. Under the Business Income (and Extra Expense) Coverage Form of the Policy, MOE promised to pay PSBC for "direct physical loss of or damage to property at premises which are described in the Declarations" "caused by or resulting from any Covered Cause of Loss."

15. Whether the above undisputed facts establish coverage with the Business Income (and Extra Expense) Coverage Form as a matter of law for "direct physical loss of or damage to" property at premises—an issue on which PSBC bears the burden of proof—is the threshold issue for determination on PSBC's Motion under CR 56.

16. Determining insurance coverage is a two-step process. First, the insured must show that the loss falls within the scope of the policy's insured losses. Second, to avoid coverage the insurer must show that specific policy language excludes the loss. *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 731, 837 P.2d 1000 (1992).

17. PSBC's Motion is directed toward the first step. It does not seek a CR 56 summary judgment determination as to any exclusions of coverage or the amount of relief to be issued.

18. The Court finds that PSBC has established that PSBC's claimed loss falls within the grant of coverage of the Business Income (and Extra Expense) Coverage Form of the Policy as a matter of law, because as a result of the proclamations and orders issued by Governor Inslee, PSBC suffered direct physical loss of its property at premises.

19. The Policy issued by MOE does not define the terms "direct physical loss of or damage to" property at premises.



GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

20. As a result, the Court is mindful of Washington's rules for interpreting insurance policies.

21. In Washington, insuring provisions must be interpreted liberally to provide coverage whenever possible. *Bordeaux, Inc. v. Am. Safety Ins. Co.*, 145 Wn. App. 687, 694, 186 P.3d 1188 (2008).

22. Insurance policies are construed in favor of coverage because: "the purpose of insurance is to insure." *Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 99 Wn.2d 65, 68, 659 P.2d 509 (1983).

23. When a term in an insurance policy is subject to multiple, reasonable definitions, the "[policyholder's] reasonable interpretation of the policy must be accepted." *Holden v. Farmers Insurance Co. of Washington*, 169 Wn.2d 750, 760, 239 P.3d 344 (2010).

24. When terms are undefined, Washington requires courts to use their "plain, ordinary, and popular" meaning – how an "average lay person" would understand them. *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 876-77, 784 P.2d 507 (1990).

25. The Court may be aided by dictionary definitions, as the Washington Supreme Court so relied upon in *Boeing v. Aetna*.

26. Dictionary definitions of "loss," include "'destruction' 'ruin' or 'deprivation.'" *Loss*, Merriam-Webster, https://www.merriam-webster.com/dictionary/loss.

27. At minimum, PSBC had a "deprivation" of its business property.

28. The undefined phrases "loss of" property and "damage to" property also are distinct from one another. *Nautilus Group, Inc. v. Allianz Global Risks US*, No. C11-5281BHS, 2012 WL 760940 (W.D. Wash. Mar. 8, 2012). In *Nautilus*, the Court reasoned that "if 'physical loss' was interpreted to mean 'damage,' then one or the other would be superfluous. The fact that



GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

WORKING COPY


they are both included in the grant of coverage evidences an understanding that physical loss means something other than damage." *Nautilus*, 2012 WL 760940, at *7.

29. The Court agrees with the rationale in *Nautilus*, especially since the undefined phrases "loss of" and "damage to" have popular meanings distinct from one another.

30. Accordingly, one reasonable interpretation of "direct physical loss of" property at premises is that the interruption of PSBC's business operations as a result of the proclamations was a direct physical loss of PSBC's property because PSBC's property could not physically be used for its intended purpose, i.e., PSBC suffered a loss of its property because it was deprived from using it.

31. The Court finds that this is an interpretation that an average lay person would understand by the phrase "loss of" property in the Policy. *See also Boeing*, 113 Wn.2d at 876.

32. In sum, the Court concludes as a matter of law that PSBC suffered a loss of its property at premises when PSBC lost the ability to use its property at premises for its intended purpose.

33. The Court, therefore, grants Plaintiff's Motion.

DATED this 23rd day of November 2020.

Michelle D. Szambelan

The Honorable Michelle Szambelan
Superior Court Judge



GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

Presented by:

**GORDON TILDEN THOMAS & CORDELL LLP**
Attorneys for Plaintiff

By: [signature]
D. Mark Wilner, WSBA #31550
John D. Cadagan, WSBA #47996
600 University Street, Suite 2915
Seattle, Washington 98101
206.467.6477
mwilner@gordontilden.com
jcadagan@gordontilden.com

**KELLER ROHRBACK LLP**
Attorneys for Plaintiff

By: [signature] w/ approval
Ian S. Birk, WSBA #31431
1201 Third Avenue, Suite 3200
Seattle, WA 98101
206.623.1900
ibirk@kellerrohrback.com

Agreed as to Form Only;
Notice and Presentation Waived by:

**DAVIS WRIGHT TREMAINE LLP**
Attorneys for Defendant

By: *s/Steven P. Caplow*
Steven P. Caplow, WSBA #19843
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150
stevencaplow@dwt.com

# Tab 3

115139329

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

FILED
NOV 17 2020
Clerk of Courts
Cuyahoga County, Ohio

DINO PALMIERI SALONS, INC.
Plaintiff

STATE AUTOMOBILE MUTUAL INSURANCE COMPANY
Defendant

Case No: CV-20-932117

Judge: MAUREEN CLANCY

## JOURNAL ENTRY

MOTION TO DISMISS OF DEFENDANT, STATE AUTO MUTUAL INSURANCE COMPANY, FILED 06/25/2020, IS DENIED.

O.S.J.

OSJ
Judge Signature Date

11/17/2020

STATE OF OHIO ) IN THE COURT OF COMMON PLEAS
) SS:
CUYAHOGA COUNTY ) CASE NO. CV-20-932117

DINO PALMIERI SALONS, INC., individually and on behalf of all others similarly situated
and

FISH FURNITURE SHOP, INC., individually and on behalf of all others similarly situated

Plaintiffs,

v.

State Automobile Mutual Insurance Company

Defendant.

**ORDER AND OPINION DENYING DEFENDANT'S MOTION TO DISMISS**

**Maureen E. Clancy, J:**

This case is before the Court on Defendant State Automobile Mutual Insurance Company's Motion to Dismiss, filed June 25, 2020. Plaintiffs Dino Palmieri Salons, Inc. and Fish Furniture Shop, Inc. filed an Opposition on July 31, 2020. Defendant filed a Reply on August 14, 2020. Plaintiffs filed a Sur-Reply on August 25, 2020, which the Court allowed over Defendant's objection on September 11, 2020. Defendant filed Supplemental Authority on August 11, 2020 and September 3, 2020. On September 9,

2020 Plaintiffs filed a response to the Supplemental Authority Defendant filed on September 3, 2020. Plaintiffs filed Supplemental Authority on August 18, 2020. On August 31, 2020, an oral argument was held on Defendant's Motion. On October 6, 2020 Defendant filed a Second Notice of Supplemental Authority, to which Plaintiffs responded on October 14, 2020. Also on October 6, 2020, Plaintiffs filed a Notice of Supplemental Authority. On October 12, 2020 Defendant filed a Third Notice of Supplemental Authority. On November 3, 2020 Defendant filed a Fourth Notice of Supplemental Authority. On November 11, 2020 Defendant filed a Fifth Notice of Supplemental Authority. Consistent with the following Order and Opinion, the Court hereby DENIES Defendant's Motion to Dismiss.

## I. Factual Background

Plaintiffs, a chain of salons and a pair of furniture stores, are insured by Defendant. On June 3, 2020 Plaintiffs filed this class action lawsuit against Defendant, State Automobile Insurance Company, on behalf of themselves and all others similarly situated. Plaintiffs have all-risk businessowners policies. "All-risk policies cover all risks of loss except for risks that are expressly and specifically excluded." *Studio 417 v. Cincinnati Ins. Co.*, W.D.Mo. No. 20-cv-03127-SRB, 2020 U.S. Dist. LEXIS 147600, *2 (Aug. 12, 2020). Included within the Policy is coverage for losses due to Business Interruption, Extra Expense coverage and coverage for losses due to the actions of a Civil Authority. Amended Complaint, ¶ 12. The Policies do not contain virus exclusions.

In their Amended Complaint, filed June 3, 2020, Plaintiffs allege that Defendant refused to provide coverage for SARS-CoV-2 and/or Covid-19-related losses which should have been covered under the Business Income, Extra Expense, and Civil Authority

provisions of their policies. The parties agree on the language within the policies. In pertinent part, those sections of the policies obligate Defendant to:

1) Business Income: "pay for the actual loss of Business Income [Plaintiffs] sustain due to the necessary 'suspension of [Plaintiffs'] 'operations' during the 'period of restoration'. The suspension must be caused by direct physical loss of or damage to the property at the described premises…"
2) Extra Expense: "pay necessary Extra Expense [Plaintiffs] sustain during the 'period of restoration' that [Plaintiffs] would not have incurred had there been no physical direct loss or damage to property at the described premises..." and
3) Civil Authority: "pay for the actual loss of Business Income [Plaintiffs] sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described physical premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss."

Plaintiffs seek a declaratory judgment that they and others similarly situated are entitled to coverage under the insurance policies they have with Defendant for losses Plaintiffs sustained, and continue to sustain, "at, in, on and/or around their premises," as a result of SARS-CoV-2 and/or Covid-19 Pandemic-related closures. Amended Complaint, ¶ 21. They allege both that SARS-CoV-2/Covid-19 *was* in their establishments during their policy periods, and that it was *probably* present in their establishments. Plaintiffs further allege that SARS-CoV-2 is a physical substance, "that is transmissible and is active on inert physical surfaces for a period of time, and that SARS-CoV-2 is a

human pathogen that causes the disease COVID-19 that can be lethal." Amended Complaint, ¶ 26, 28. Plaintiffs further allege that "SARS-CoV-2 has been transmitted by human contact with surfaces and items of physical property located at premises in Ohio" and "SARS-CoV-2 has been transmitted by human contact with airborne particles emitted into the air at premises in Ohio." Amended Complaint, ¶ 31, 34. Plaintiffs further allege the presence of any SARS-CoV-2 particles causes direct physical harm to property, direct physical loss to property and direct physical damage to property. Amended Complaint, ¶ 38, 39, 40. They allege that the presence of any SARS-CoV-2 particles at premises renders the premises unsafe, thereby impairing the premises' value, usefulness, and normal function; that the presence of people infected with or carrying SARS-CoV-2 particles renders physical property in their vicinity unsafe and unusable, resulting in direct physical loss to that property; that the presence of people infected with or carrying SARS-CoV-2 particles at premises renders the premises, including property located at that premises, unsafe, resulting in direct physical loss to the premises and property. Amended Complaint, ¶ 36, 41, 42. Plaintiffs allege that they "have sustained direct physical loss and damage to items of property located at their premises and direct physical loss and damage to the premises described in their Policies as a result of the presence of SARS-CoV-2, COVID-19, and/or the COVID-19 Pandemic." Amended Complaint, ¶ 67. Thus, Plaintiffs allege that the presence of SARS-CoV-2, COVID-19, and/or the Covid-19 Pandemic caused direct physical loss or damage to property. "Physical loss or damage to property" is not defined in the policies.

Plaintiffs also contend that as a result of Covid-19, the State of Ohio issued authoritative orders mandating that they cease or significantly curtail their operations.

They allege that on March 9, 2020, Ohio Governor Mike DeWine declared a state of emergency in response to the Covid-19 pandemic; that on March 18, 2020 Ohio ordered the temporary closure of all hair and nail salons; and that on March 22, 2020 the Ohio Department of Health ordered all non-essential businesses (including Plaintiffs) in Ohio to cease all activities. Amended Complaint, ¶ 49-52.

Defendant argues that the mere possibility of the presence of Covid-19 in Plaintiffs' businesses is not sufficient to survive its Civ.R. 12(b)(6) Motion. It also argues that the presence of a virus cannot satisfy the requirement that Plaintiffs have suffered direct physical loss or damage (a threshold requirement to coverage under the three policy sections that are the subject of Plaintiffs' Amended Complaint). In addition, Defendants argue that Ohio Public Health Orders at issue cannot create a covered claim. As a result, Defendants move to dismiss Plaintiff's Amended Complaint.

## II. Legal Standard

Pursuant to *State ex rel. Bush v. Spurlock*, 42 Ohio St.3d 77, 80, a motion to dismiss for failure to state a claim upon which relief can be granted under Civ.R. 12(b)(6) will only be granted where the party opposing the motion is unable to prove any set of facts that would entitle him to relief. Indeed, before a court may dismiss an action under this rule, "* * * it must appear beyond doubt from the Complaint that the Plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. University Community Tenants Union* (1975), 42 Ohio St.2d 242, 71 O.O.2D 223, 327 N.E.2d 753, syllabus. To make this determination, the Court is required to interpret all material allegations in the Complaint as true and admitted. *State ex rel. Bush v. Spurlock*, 42 Ohio St.3d 77, 80. The Court must draw all reasonable inference in favor of the non-moving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988).

## III. Analysis

Defendant's overarching argument is that Plaintiffs' allegations do not rise to the level of direct physical loss or damage to property, and therefore, because physical loss or damage to property is a threshold requirement for coverage under the three policy provisions at issue here, Plaintiffs' Amended Complaint must be dismissed.

"Insurance policies are contracts and their interpretation is a matter of law for the court . . . Insurance coverage is determined by reasonably construing the contract in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed. Contract terms are to be given their plain and ordinary meaning. Where provisions of a contract of insurance are reasonably susceptible to more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured. However, where the intent of the parties to a contract is evident from the clear and unambiguous language used, a court must not read into the contract a meaning not contemplated or placed there by an act of the parties to the contract. Although, as a rule, a policy of insurance that is reasonably open to different interpretations will be construed most favorably for the insured, that rule will not be applied so as to provide an unreasonable interpretation of the words of the policy." *Dunson v. Home-Owners Ins. Co.*, 3d Dist. Hancock No. 5-09-37, 2010-Ohio-1928, ¶ 12-14 (internal citations and quotations omitted).

"Physical loss or damage" is not defined in the policy. As noted by Defendant in its Motion, The Eighth District Court of Appeals has previously interpreted the requirement in an insurance policy that the insured property in question must have sustained physical loss, damage, or injury:

> Read in context with the other terms used in the definition of "property damage," we construe the term "physical injury" to mean a harm to the property that adversely affects the structural integrity of the house. This interpretation is consistent with authorities on insurance law. *See, e.g.*, 10A Couch on Insurance (3d Ed. 1998), Section 148:46 ("The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property"); Comment, Why Fear the Fungus: Why Toxic Mold Is and Is Not the Next Big Toxic Tort (2004), 52 Buff.L.Rev. 257, 276 (homeowners must show "distinct and demonstrable" damage to property as a result of mold growth, such as "clear physical damage to the structure of the home" to recover under a homeowner policy).

*Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App. 3d 23, 2008-Ohio-311, 884 N.E.2d 1130, ¶ 61 (8th Dist.) (holding that the trial court had erred when it refused to grant a directed verdict to insurer where plaintiffs "presented no evidence to show that the mold on the siding of their house constituted 'physical damage' as that term is used in the policy." *Id.* at ¶ 63). The Eighth District's holding in *Mastellone*, however, interpreted the policy in question – as well as whether plaintiffs had satisfied the terms of that policy – with the benefit of evidence, including expert opinions. At the Motion to Dismiss stage, this Court does not have the benefit of similar evidence.

The Court finds that, at this juncture, Plaintiffs' allegations in their Amended Complaint are sufficient to withstand Defendant's Motion. While Defendant argues that the mere possibility Covid-19 was present in Plaintiffs' establishments is not enough to survive Defendant's Motion to Dismiss, Plaintiffs allege that they "have sustained direct physical loss and damage to items of property located at their premises and direct physical loss and damage to the premises described in their Policies as a result of the presence of SARS-CoV-2, COVID-19, and/or the COVID-19 Pandemic." Amended

Complaint, ¶ 67. Though Defendant points to *Mastellone* to provide an interpretation of "physical loss or damage," thereby arguing that Plaintiffs have not satisfied that definition and so are not entitled to coverage, the Court finds that analysis to be premature. Interpreting all material allegations in the Amended Complaint as true and admitted, and drawing all reasonable inferences in favor of Plaintiffs, the Amended Complaint sufficiently contends that Plaintiffs' premises sustained physical loss or damage directly from the presence of physical Covid-19 particles.

While parts of Plaintiffs' Amended Complaint refer to the "probable" presence of Covid-19 in their establishments, Plaintiffs have also alleged the affirmative physical presence of the virus on their premises, and ensuing physical damage and loss. In addition, other courts have found that allegations of the *likely* existence of Covid-19 particles at a business was enough to survive a motion to dismiss when similar policy language was at issue.

In denying defendant insurance company's Motion to Dismiss in a similar action, the Western District of Missouri explained:

> Plaintiffs allege that COVID-19 is a highly contagious virus that is physically "present . . . in viral fluid particles," and is "deposited on surfaces or objects." Plaintiffs further allege that this physical substance is likely on their premises and caused them to cease or suspend operations . . . Plaintiffs expressly allege physical contamination . . . [none of the] cases cited by Defendant warrant dismissal under Rule 12(b)(6).
>
> Defendant's reply brief cites recent out-of-circuit decisions which found that COVID-19 does not cause direct physical loss . . . [But] Plaintiffs here have plausibly alleged that COVID-19 particles attached to and damaged their property, which made their premises unsafe and unusable. This is enough to survive a motion to dismiss.
>
> Defendant also contends that if Plaintiffs' interpretation is accepted, physical loss would be found "whenever a business suffers economic harm." That is not what the Court holds here. Although Plaintiffs allege economic harm, that harm is

> tethered to their alleged physical loss caused by COVID-19 and the Closure Orders. (Doc. #1-1, ¶¶ 106-107) (alleging that the COVID-19 pandemic and Closure Orders required Plaintiffs to "cease and/or significantly reduce operations at, and . . . have prohibited and continue to prohibit access to, the premises.") For all these reasons, the Court finds that Plaintiffs have adequately alleged a direct physical loss under the Policies.

*Studio 417 v. Cincinnati Ins. Co.*, W.D.Mo. No. 20-cv-03127-SRB, 2020 U.S. Dist. LEXIS 147600, *17-18 (Aug. 12, 2020) (internal citations and quotations omitted). *See also Blue Springs Dental Care v. Owners Ins. Co.*, W.D.Mo. No. 20-CV-00383-SRB, 2020 U.S. Dist. LEXIS 172639, *12-13 (Sept. 21, 2020) ("Here, Plaintiffs allege that 'it is likely customers, employees, and/or other visitors to the insured properties over the recent month were infected with the coronavirus,' they 'suspended operations due to COVID-19 to prevent physical damages to the premises by the presence or proliferation of the virus and the physical harm it could cause persons present there,' and that 'customers cannot access the property due to the Stay at Home Orders or fear of being infected with or spreading COVID-19.' . . . Plaintiffs also explain how COVID-19 is physically transmitted by air and surfaces through droplets, aerosols, and fomites that remain infectious for extended periods of time . . . Taking Plaintiffs' fact allegations as true, as the Court must at this stage, and after drawing reasonable inferences from those facts in their favor, Plaintiffs plausibly allege that COVID-19 physically attached itself to their dental clinics, thereby depriving them of the possession and use of those insured properties").

Here, not only do Plaintiffs allege that Covid-19 – a physical substance – was *likely* on their premises (as do the Plaintiffs in *Studio 417* and *Blue Springs Dental Care*), but that it *was* physically present and that it caused physical loss and damage. Accordingly, the Court finds that Plaintiffs have sufficiently alleged that Covid-19 existed on their premises, and that it caused direct physical loss and damage.

Defendant also contends that even if Plaintiffs are able to prove that Covid-19 was present in their establishments, the presence of Covid-19 does not meet the definition of "physical loss or damage to property," so coverage would not apply. The Court finds that, again, Plaintiffs' Amended Complaint alleges that they have suffered physical loss and damage as the result of the physical presence of Covid-19 in their establishments, and that allegation – which must be taken as true at this stage – is sufficient to survive a motion to dismiss. *See* Amended Complaint, ¶ 67.

Moreover, Plaintiffs have plausibly stated a claim for extra expense and civil authority coverage under the policy as both require Plaintiffs to experience direct physical loss and damage to the property. Again, as discussed previously, Plaintiffs have adequately alleged that they suffered direct physical loss and damage to their property as a result of the physical presence of SARS-CoV-2. Plaintiffs adequately allege that the presence of the COVID-19 virus in and on their premises caused them to suffer direct physical loss and damage to their premises.

As to civil authority coverage, Defendants argue that Plaintiffs' losses are due to the State of Ohio's March 2020 orders forcing non-essential businesses (including Plaintiffs) to close, rather than direct losses due to Covid-19, but similarly, Plaintiffs' Amended Complaint – while it does attribute losses to the shutdown orders – also alleges losses stemming from the actual physical presence of the virus, both in the air and on the surfaces. *Id.* In addition, the Court finds that Plaintiffs' allegations at the Motion to Dismiss stage plausibly allege that access to their premises was prohibited to such a degree as to trigger the civil authority coverage, as Plaintiffs have adequately established the "requisite causal link between damage to adjacent property and denial of access" to their

stores. *Mudpie, Inc. v. Travelers Cas. Ins. Co.*, N.D.Ca. No. 20-cv-03213-JST, 2020 U.S. Dist. LEXIS 168385, *19 (Sept. 14, 2020). As in *Studio 417*, the policy here does not specify that *all* access to the premises be absolutely prohibited. Plaintiffs have adequately stated a claim under the civil authority section of their policies.

Moreover, the cases on which Defendant relies to argue that this case should be decided at the Motion to Dismiss stage were either decided after the Court had the opportunity to consider evidence; or did not include allegations that plaintiffs' losses were attributable to the physical presence of Covid-19; or involved policies with a specific virus exclusion; or did not involve a virus at all, or did not allege direct physical harm. *See, e.g. Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App.3d 23, 2008-Ohio-311, 884 N.E.2d 1130 (directed verdict; mold); *Universal Image Prods. v. Chubb Corp.*, 703 F. Supp. 2d 705, (E.D.Mich.2010) (motion for summary judgment; mold); *10E v. Travelers Indem. Co.*, C.D.Ca. No. 2:20-cv-04418, 2020 U.S. Dist. LEXIS 165252 (Sept. 2, 2020) (virus exclusion; losses attributable to government orders); *Malaube v. Greenwich Ins. Co.*, S.D.Fla. No. 20-22615, 2020 U.S. Dist. LEXIS 156027 (Aug. 26, 2020) (virus exclusion; losses attributable to government orders); *Pappy's Barber Shops, Inc, v. Farmers Grp., Inc.*, S.D.Ca. No. 20-CV-907-CAB-BLM, 2020 U.S. Dist. LEXIS 166808 (Sept. 11, 2020) (losses attributable to government orders).

Accordingly, since Plaintiffs' Amended Complaint alleges the physical presence of Covid-19 on their premises, and that Plaintiffs suffered physical loss or damage directly stemming from the physical presence of Covid-19, the Court finds that Plaintiffs' Amended Complaint adequately states a claim upon which relief may be granted.

**Conclusion**

Interpreting all material allegations in the Amended Complaint as true and admitted, and drawing all reasonable inferences in favor of Plaintiffs, Defendant's June 25, 2020 Motion to Dismiss is therefore DENIED.

11·17·2020

**MAUREEN E. CLANCY, JUDGE**

# Tab 4

FILED
2020 NOV 13 09:00 AM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 20-2-07925-1 SEA

SUPERIOR COURT OF THE STATE OF WASHINGTON
KING COUNTY

HILL AND STOUT PLLC, a Washington company,

Plaintiff,

v.

MUTUAL OF ENUMCLAW INSURANCE COMPANY, a Washington insurance company,

Defendant.

No. 20-2-07925-1 SEA

**ORDER DENYING DEFENDANT MUTUAL OF ENUMCLAW'S MOTION TO DISMISS**

This matter came before the Court on Defendant's Motion to Dismiss, and the Court having considered the pleadings submitted by the parties in support and in opposition of the motion including the following:

1. Plaintiffs' Amended Complaint;
2. Defendant's Motion to Dismiss
3. Declaration of Steven P. Caplow in support of Defendant's Motion;
4. Plaintiffs' Response in opposition
5. Declaration of Ian S. Birk in support of Plaintiff's Response;
6. Defendant's Reply; and

And having heard the oral argument of the parties, makes the following Findings:

**<u>Undisputed Facts</u>:**

- Plaintiff Hill and Stout PLLC ("HS") is a dental practice with offices in Oak Harbor and Anacortes, Washington.

- Mutual of Enumclaw Insurance Company ("MOE") issued a Business Owner's policy ("Policy") policy to the Plaintiff covering the Plaintiff's property and business for calendar years 2019 and 2020. The Policy covered the equipment and supplies used in the business.
- On March 19, 2020, due to the COVD-19 pandemic and shortage of the Personal Protective Equipment ("PPE"), Governor Inslee issued Proclamation 20-24 which prohibited medical professionals including dentists from performing non-emergency routine procedures that required the use of the PPE.
- No COVID-19 virus has been detected on HS's business premises.

HS brought the current law suit against MOE for declaratory judgment and for breach of contract; claiming HS incurred losses and expenses resulting from the interruption of its business due to the Governor's Proclamation and that such losses and expenses are covered by the Policy issued by MOE and further alleging that MOE's denial of coverage for loss of business income and related expenses was breach of the insurance contract by MOE.

MOE argues that HS has failed to allege "direct physical loss" which are the required elements for coverage under the Policy. MOE then argues that the Complaint only alleges "indirect" rather than "direct" loss and therefore must be dismissed under CR 12(b)(6).

**<u>Legal Standard</u>**

Dismissal pursuant to CR 12(b)(6) motion is appropriate only when it appears beyond doubt that the claimant can prove no set of facts, consistent with the complaint, which would justify recovery. See *Hipple v. McFadden*, 161 Wn. App 550, 556, 255 P.3d 730 (2011). In reviewing a CR 12(b)(6) motion, the Court presumes all factual allegations in the complaint to be true and also considers any hypothetical facts, consistent with the complaint, proffered by the Plaintiff. *Gorman v. Garlock, Inc.* 155 Wn.2d 198, 214, 118 P.3d 311 (2005).

Furthermore, where a case involves a dispute regarding the coverage provisions of an insurance policy, the insured bears the burden of showing that coverage exists, and the insurer bears the burden of showing that an exception applies. *Mut. of Enumclaw Ins. Co. v. T & G Const., Inc.*, 165 Wash. 2d 255, 268, 199 P.3d 376, 383 (2008).

**MOE's motion to dismiss for failure to state a claim under CR 12(b)(6):**

MOE brought the current motion for dismissal against HS for failure to state a claim for "direct physical loss of or damage to" the covered property.

In its motion MOE argues that the core coverage issue under the Policy is the requirement for the Plaintiff to show that the loss of income is related to "direct physical loss of or damage to" the covered property. MOE argues that the Additional Coverage provision in the Policy refers to Covered Cause of Loss (which requires a showing of "direct physical loss of or damage to") and applies during a period that the covered property is being repaired, rebuilt, or replaced.

MOE further argues that the Plaintiff has failed to state a claim for Civil Authority provision of the Policy.

In response, HS argues that the terms of the Policy are to be given a liberal interpretation and that the insurance policies are to be construed in favor of the insureds. HS argues that the terms "direct physical loss of" or "damage to" the covered property are ambiguous and that HS suffered a direct physical loss of the covered property when the dental office and dental equipment could not be used for their intended use of dentistry services. HS further argues that pursuant to the wide spread of COVID-19 and the Governors' orders, there is a triable issue as to their access to the property by reason of property damage occurring at locations other than their business.

**Legal Analysis**:

Washington courts examine the terms of an insurance contract to determine whether under the plain meaning of the contract there is coverage. *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wash.2d 869, 876, 784 P.2d 507 (1990). [1]

In interpreting the insurance policies, the Court considers the Policy as a whole and applies a fair, sensible and reasonable meaning to its construction. *Capelouto v. Valley Forge Ins. Co.*, 98 Wash.App. 7, 13, 990 P.2d 414 (1999).

[1] See also *Nautilus Grp., Inc. v. Allianz Glob. Risks US*, No. C11-5281BHS, 2012 WL 760940, at *4 (W.D. Wash. Mar. 8, 2012)

Washington Supreme Court has held that a policy provision is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable and that where a clause is ambiguous, a meaning and construction most favorable to the insured must be applied. *Washington Restaurant Corp. v. General Ins. Co. of America*, 64 Wash.2d 150, 390 P.2d 970 (1964); *American Star Ins. Co. v. Grice,* 121 Wash.2d 869, 874, 854 P.2d 622 (1993), supplemented by 123 Wash.2d 131, 865 P.2d 507 (1994); and *Morgan v. Prudential Ins. Co. of America*, 86 Wash.2d 432, 435, 545 P.2d 1193 (1976).

The Coverage paragraph in MOE's Policy provides: *"We will pay for direct physical loss of or damage to Covered Property ..."*. The Policy does not define "direct physical loss". Similarly, the Policy does not define the terms "loss of" or "damage to" but both terms are included in the Policy language. The Policy language uses "or" to separates the "direct physical loss of" and "damage to" providing for an *alternative* means of coverage. The Court therefore has to consider these terms as alternative means for coverage.

When the terms are undefined, the courts are required to use their *"plain, ordinary, and popular"* meaning and may refer to dictionaries for undefined words. *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877, 784 P.2d 507 (1990).

The Court first considers the term "loss". The dictionary definition for "loss" includes "destruction", "ruin", "deprivation"[2] . In applying the ordinary meaning of "deprivation", the Court finds that the Plaintiff's position that the dental practice had a "direct physical deprivation" of its property when they were unable to see patients and practice dentistry is a reasonable interpretation by the average lay person.

The Court finds that MOE in its motion applies identical meaning to the terms "loss of" and "damage to" and in this way argues that the coverage does not apply because the Plaintiff has not shown any physical damage such as damage to a property caused by fire.

While there is no factual allegation of physical alteration of the property, MOE's narrow reading of the Policy is silent as to the Policy's language providing "physical loss of" as an alternative basis for coverage. Clearly the language in the Policy intended to provide alternative means for coverage, otherwise the Policy would use one or the other term and not both as

---

[2] www.merriam-webster.com

alternative means. If "physical loss of" was interpreted to mean "damage to" then one or the other would be surplusage. The Court has to give meaning to the whole language and to every word in a policy[3] and cannot ignore the alternative means of coverage provided in the Policy. The fact that both terms were included in the coverage provision shows that the drafters of the Policy meant the term "physical loss of" to mean something other than "damage to".

MOE's argument that gives the same exact meaning to both terms contradicts and ignores the clear intent of the Policy. Such narrow reading is not supported by the appellate decisions in Washington.

The Court therefore finds that the phrase "physical loss of" is ambiguous because it is fairly susceptible to two reasonable interpretations and dismissal under CR 12(b)(6) is not appropriate.

Applying the legal standard to MOE's motion for dismissal on other noted grounds, the Court further finds that dismissal on all other grounds is not appropriate pursuant to CR 12(b)(6). MOE has not shown that under the specific facts in this case, beyond doubt, HS can prove no set of facts, consistent with the complaint, which would justify recovery.

It is hereby ORDERED that that:

Defendant's Motion to Dismiss Plaintiff's claims is DENIED.

IT IS SO ORDERED.

ENTERED this 12th day of November, 2020.

Susan Amini
SUPERIOR COURT JUDGE

[3] *Boeing, supra* at 898.

# King County Superior Court
# Judicial Electronic Signature Page

Case Number: 20-2-07925-1
Case Title: HIT &apm; STOUT VS MUTUAL OF ENUMCLAW INS CO

Document Title: ORDER

Signed by: Susan Amini
Date: 11/13/2020 9:00:00 AM



___________________________________

Judge/Commissioner/ProTem: Susan Amini

This document is signed in accordance with the provisions in GR 30.

Certificate Hash: 159415225D6BB8EE7A492D186C59A47D27019585
Certificate effective date: 7/16/2018 2:40:04 PM
Certificate expiry date: 7/16/2023 2:40:04 PM
Certificate Issued by: C=US, E=kcscefiling@kingcounty.gov, OU=KCDJA, O=KCDJA, CN="Susan Amini: nrHJ/QrS5hGYRNT2AFk6yQ=="

# Tab 5

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

DOCKETED
OCT 26 2020
R. POSTELL
COMMERCE PROGRAM

| | | |
|---|---|---|
| **TAPS & BOURBON ON TERRACE, LLC** *Plaintiff* | : | **JULY TERM, 2020** |
| | : | **NO. 00375** |
| **v.** | : | |
| | : | **COMMERCE PROGRAM** |
| **UNDERWRITERS AT LLOYDS LONDON and MAIN LINE INSURANCE OFFICES, INC.** | : | **CONTROL NO. 20093025** |
| *Defendants* | : | |

**ORDER**

AND NOW, this 26th day of October, 2020, upon consideration of defendant Certain Underwriters at Lloyd's, London's, improperly identified as "Those Certain Underwriters at Lloyd's London" preliminary objections to plaintiff's complaint, and any response thereto, it is hereby

**ORDERED**

Taps & Bourbon On Terra-ORDER
20070037500035

that the preliminary objections are **OVERRULED.**[1]

[1] Pursuant to Pa. R.C.P. 1028(a)(4), a party may raise a preliminary objection due to legal insufficiency of a pleading (demurrer). When considering preliminary objections, all material facts and reasonable inferences set forth must be admitted as true. Haun v. Cmty. Health Sys. Inc., 14 A.3d 120, 123 (Pa. Super. 2011) (citation omitted). A court may not consider facts that are not contained within the challenged pleading. See Detweiler v. School Dist. Of Borough of Hatfield, et al., 104 A.2d 110, 113 (Pa. 1954).

This litigation arises from the denial of insurance coverage for business losses as a result of the COVID-19 pandemic and the resulting state and local orders mandating that all non-essential businesses be temporarily closed. In the instant preliminary objections, defendant alleges that plaintiff's claim is not covered under the policy because, *inter alia*, there is no "direct physical loss" or "damage to" the property, the civil authority coverage provision does not apply, and the virus exclusion provision precludes coverage. Additionally, defendant alleges that since the claim is not covered, a bad faith claim cannot survive.

At this very early stage, it would be premature for this court resolve the factual determinations put forth by defendant to dismiss plaintiff's claims. Taking the factual allegations made the plaintiff's complaint as true, as this court must at this time, plaintiff has successfully

**BY THE COURT:**

**GLAZER, J.**

pled to survive this stage of the proceedings. Moreover, the law and facts are rapidly evolving in the area of COVID-19 related business losses. Accordingly, the preliminary objections are overruled.

# Tab 6

**IN THE COURT OF COMMON PLEAS**
**COUNTY OF SUMMIT**

| | | |
|---|---|---|
| CHAPPARELLS INC. | ) | CASE NO.: CV-2020-06-1704 |
| | ) | |
| Plaintiff | ) | JUDGE KATHRYN MICHAEL |
| -vs- | ) | |
| | ) | |
| THE CINCINNATI INSURANCE COMPANY | ) | **ORDER** |
| | ) | |
| | ) | |
| Defendant | | |

\- - -

This matter comes before the Court on the Defendant's Motion to Dismiss, filed on August 27, 2020. The Plaintiffs filed a response in opposition on September 8, 2020.

The Defendant seeks dismissal of the complaint against it pursuant to Civ. R. 12(B)(6). This Motion was made prior to any other responsive pleading and is in procedural compliance with Civ. R. 12(B).

**STANDARD OF REVIEW UNDER CIV. R. 12(B)(6)**

Civ. R. 12(B)(6) allows courts to dismiss a complaint for failure to state a claim upon which relief can be granted. The court is limited to a review of the complaint and any material included with the complaint in its review of a motion to dismiss pursuant to Civ. R. 12(B)(6). *Fisher v. Ahmed* (2020), 2020-Ohio-1196, ¶9, citing *State ex rel. Crabtree v. Franklin Cty. Bd. of Health* (1997), 77 Ohio St.2d 247, fn.1. A challenge under Civ. R. 12(B)(6) is a simply test of the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey County Bd. of Commr.* (1992), 65 Ohio St.3d 545, 548. The Court, however, must be convinced "beyond doubt" that the Plaintiff can prove no set of facts entitling them to recovery before the dismissing the complaint pursuant to this section. *Id*, citing *O'Brien v. University Community Tenants Union* (1975), 42 Ohio St.2d 141.

A complaint's sufficiency is measured by the standards set forth in Civ. R. 8(A), which require a short and plain statement of the claim showing that the party is entitled to relief and

a demand for judgment for the relief to which the party claims to be entitled. The Court must also presume that all factual allegations in the complaint are true and must make all reasonable inferences in favor of the non-moving party. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190.

**ANALYSIS OF COMPLAINT AGAINST CIV. R. 12(B)(6) and CIV. R. 8(A)**

The Plaintiffs' complaint, as filed on June 11, 2020, alleges three counts: (1) declaratory judgment; (2) breach of contract; and (3) breach of the duty of good faith and fair dealing.

First, an action for declaratory judgment is a method by which parties can receive certainty regarding their legal rights and obligations. *Chojnacki v. Mohr* (9th Dist., 2018), 2018-Ohio-1167, ¶14, citing *Mid-Am Fire & Cas. Co. v. Heasley* (2007), 113 Ohio St. 3d 133, ¶8. In ruling upon a declaratory judgment, a court must either declare the rights of the parties or dismiss the complaint, which the court must do if no justiciable issue exists between the parties or if the judgment will not terminate the uncertainty. *Id*, citing *Velasquez v. Ghee* (9th Dist., 1994), 99 Ohio App.3d 52, 53-54. As the Court is not called to rule upon the merits of the declaratory judgment in a review under Civ. R. 12(B)(6), the Court simply uses this guidance as a tool by which to review the complaint. With this view to the complaint, the Court finds that the Plaintiffs made a short and plain statement regarding the existence of an actual case or controversy for declaratory judgment and that the Plaintiffs made a demand for judgment and relief under its claim.

Second, the Plaintiffs claim a breach of contract between the parties. To establish a breach of contract, a plaintiff must prove: (1) the existence of the contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages or loss resulting from the breach. *Lucarell v. Nationwide Mutual Insurance Company* (2018), 152 Ohio St.3d 453, 463. The Plaintiffs' Complaint reflects that the Plaintiffs assert a brief statement of their claim: that a contract for insurance services existed between the parties; that the Plaintiffs performed

by paying premiums in exchange for a policy issued by the Defendant; that the Defendant breached by denying coverage under the policy; and that the Plaintiffs suffered damages.

Finally, the court considers the Plaintiffs' claim for breach of the duty of good faith and fair dealing. Case law acknowledges this duty of an insurer to act in good faith and that the failure to do so will give rise to a cause of action against the insurer. *Ohio Natl. Life Assur. Corp. v. Satterfield* (9th Dist., 2011), 2011-Ohio-2116, ¶13, citing *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 276. The Plaintiffs allege in the Complaint that the Defendant is bound by a requirement of good faith and fair dealing and that the Defendant breached this duty.

Upon review of the Complaint, the Court finds that the Plaintiffs meet the minimum requirements of sufficiency in each of their claims to defeat a challenge under Civ. R. 12(B)(6). Therefore, the Plaintiffs has alleged sufficient factual information in their pleadings to satisfy Civ. R. 8(A).

**CONCLUSION**

The Court finds that the Complaint meets the minimum requirements of sufficiency to survive a challenge under Civ. R. 12(B)(6). The Court cannot find beyond doubt that there is no set of facts that Plaintiffs can prove that would entitle them to recovery.

THEREFORE, the Defendant's Motion to Dismiss the Plaintiff's Complaint pursuant to Civ. R. 12(B)(6) is hereby DENIED.

This matter shall be scheduled for a Telephone Status Conference by separate order.

IT IS SO ORDERED.



JUDGE KATHRYN MICHAEL

CC: ATTORNEY RONALD K. STARKEY
ATTORNEY ADAM M. RUNKLE

ATTORNEY GREGORY H. COLLINS
ATTORNEY SCOTT D. STEPHENSON

EDV

# Tab 7

CAUSE NO. DC-20-05751-A

| | | |
|---|---|---|
| LOMBARDI'S, INC., et al | § | IN THE JUDICIAL COURT |
| | § | |
| VS. | § | 14TH DISTRICT COURT |
| INDEMNITY INSURANCE COMPANY OF NORTH AMERICA | | DALLAS COUNTY |

**ORDER DENYING MOTION TO DISMISS PURSUANT TO RULE 91A**

On this date came to be heard Defendant Indemnity Insurance Company of North America's Amended Motion to Dismiss Pursuant to Rule 91A. After considering the pleadings on file and arguments of Counsel the Court is of the opinion that the Motion should be **DENIED**.

**IT IS SO ORDERED**.

Signed this 15th day of October 2020

JUDGE ERIC MOYÉ
14TH DISTRICT COURT

# Tab 8

STATE OF NORTH CAROLINA

COUNTY OF DURHAM

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
CASE NO. 20-CVS-02569

2020 OCT -9 P 3:14

... CO., C.S.C.

NORTH STATE DELI, LLC d/b/a LUCKY'S DELICATESSEN, MOTHERS & SONS, LLC d/b/a MOTHERS & SONS TRATTORIA, MATEO TAPAS, L.L.C. d/b/a MATEO BAR DE TAPAS, SAINT JAMES SHELLFISH LLC d/b/a SAINT JAMES SEAFOOD, CALAMARI ENTERPRISES, INC. d/b/a PARIZADE, BIN 54, LLC d/b/a BIN 54, ARYA, INC. d/b/a CITY KITCHEN and VILLAGE BURGER, GRASSHOPPER LLC d/b/a NASHER CAFE, VERDE CAFE INCORPORATED d/b/a LOCAL 22, FLOGA, INC. d/b/a KIPOS GREEK TAVERNA, KUZINA, LLC d/b/a GOLDEN FLEECE, VIN ROUGE, INC. d/b/a VIN ROUGE, KIPOS ROSE GARDEN CLUB LLC d/b/a ROSEWATER, and GIRA SOLE, INC. d/b/a FARM TABLE and GATEHOUSE TAVERN,

*Plaintiffs*,

v.

THE CINCINNATI INSURANCE COMPANY; THE CINCINNATI CASUALTY COMPANY; MORRIS INSURANCE AGENCY INC.; and DOES 1 THROUGH 20, INCLUSIVE,

*Defendants*.

**ORDER GRANTING PLAINTIFFS' RULE 56 MOTION FOR PARTIAL SUMMARY JUDGMENT**

THIS MATTER was heard on September 23, 2020, before Senior Resident Superior Court Judge Orlando F. Hudson, Jr., with Gagan Gupta appearing for the plaintiff-restaurants (including Vin Rouge, Parizade, Mateo Bar de Tapas, Rosewater, Mothers & Sons Trattoria, Saint James Seafood, Lucky's Delicatessen, Bin 54, City Kitchen, Village Burger, Nasher Cafe,

Local 22, Kipos Greek Taverna, Golden Fleece, Farm Table, and Gatehouse Tavern[1]), and Brian Reid and Drew Vanore appearing for defendant-insurers The Cincinnati Insurance Company and The Cincinnati Casualty Company (collectively, "Cincinnati"). Plaintiffs brought a Motion for Partial Summary Judgment ("Motion") with respect to Count I of their Second Amended Complaint, seeking a declaratory judgment that Cincinnati must replace Plaintiffs' lost business income and extra expenses under insurance policy contracts entered into between the parties.[2]

THE COURT, having considered the pleadings, the Motion, the briefs filed in support of and in opposition to the Motion, the oral arguments of counsel at the hearing on the Motion, the declaration of Gagan Gupta, the affidavit testimony of the Plaintiffs and their supporting affidavits of Giorgios Nikolaos Bakatsias, Matthew Raymond Kelly, and Djafar "Jay" Mehdian, the applicable law, and other appropriate matters of record, GRANTS Plaintiffs' Motion.

Upon a review of the entire record, the Court holds there are no genuine issues as to any material fact and Plaintiffs are entitled to partial summary judgment against Cincinnati as a matter of law on the issue of liability under Count I of the Second Amended Complaint. To that end, the Court sets forth its primary reasoning herein.

---

[1] The parent companies of these restaurants, and the entities bringing this lawsuit, are Vin Rouge, Inc. d/b/a Vin Rouge; Calamari Enterprises, Inc. d/b/a Parizade; Mateo Tapas, L.L.C. d/b/a Mateo Bar de Tapas; Kipos Rose Garden Club LLC d/b/a Rosewater; Mothers & Sons, LLC d/b/a Mothers & Sons Trattoria; Saint James Shellfish LLC d/b/a Saint James Seafood; North State Deli, LLC d/b/a Lucky's Delicatessen; Bin 54, LLC d/b/a Bin 54; Arya, Inc. d/b/a City Kitchen and Village Burger; Grasshopper LLC d/b/a Nasher Cafe; Verde Cafe Incorporated d/b/a Local 22; Floga, Inc. d/b/a Kipos Greek Taverna; Kuzina, LLC d/b/a Golden Fleece; and Gira Sole, Inc. d/b/a Farm Table and Gatehouse Tavern (collectively, "Plaintiffs").

[2] The operative pleading to which this Order applies is the Second Amended Complaint.

## I. BACKGROUND[3]

Plaintiffs, which operate sixteen restaurants in the North Carolina counties of Durham, Wake, Orange, Chatham, and Buncombe, purchased "all risk" property insurance policies ("Policies") from Cincinnati to cover their restaurants. All risk policies cover all risks of loss unless those risks are expressly excluded or limited. Plaintiffs' Policies were effective during all relevant time periods and contain the same relevant language.

The Policies include a Building and Personal Property Coverage Form and a Business Income (and Extra Expense) Coverage Form. These forms provide that Cincinnati will pay for business interruption coverage as follows:

> (1) **Business Income**
> We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss.
>
> . . .
>
> (2) **Extra Expense**
> We will pay Extra Expense you sustain during the "period of restoration". Extra Expense means necessary expenses you sustain . . . during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss.

Under the Policies, "Covered Cause of Loss" means "direct 'loss' unless the 'loss' is excluded or limited" therein. The Policies define "loss" to mean "accidental physical loss or accidental physical damage." Therefore, absent an exclusion or limitation, the Policies provide

---

[3] The Court has not resolved any disputed issues of fact, as findings of fact are unnecessary for adjudicating Plaintiffs' Motion for Partial Summary Judgment. Rather, the Court offers an overview of key undisputed facts underlying the ultimate disposition.

coverage under these provisions where the policyholder shows (i) direct "accidental physical loss" to property, ***or*** (ii) direct "accidental physical damage" to property. The Policies do not define "direct," "accidental," "physical loss," or "physical damage."

Plaintiffs seek coverage under the Policies for losses arising out of the response to the SARS-CoV-2 ("COVID-19") pandemic. Beginning in March 2020, governmental authorities across North Carolina entered civil authority orders mandating the suspension of business operations at various establishments, including Plaintiffs' restaurants (hereafter, "Government Orders"). The orders also prohibited, via stay-at-home mandates and travel restrictions, all non-essential movement by all residents.

On August 3, 2020, Plaintiffs filed their Motion for Partial Summary Judgment ("Motion"), seeking a declaratory judgment against Cincinnati under Count I that the Government Orders constitute covered perils under the Policies that caused "direct 'loss' to property" at the described premises, and that therefore Cincinnati must pay for the resulting lost Business Income and Extra Expenses as defined by the Policies. Plaintiffs' primary contention is that the Government Orders forced Plaintiffs to lose the physical use of and access to their restaurant property and premises, which constitutes a non-excluded "direct physical loss."

## II. STANDARDS OF INTERPRETATION FOR INSURANCE POLICIES

The meaning of an insurance policy is a question of law, *Accardi v. Hartford Underwriters Ins. Co.*, 373 N.C. 292, 295, 838 S.E.2d 454, 456 (2020), and it is black-letter law that an undefined policy term is to be given its "ordinary meaning"; in doing so, North Carolina courts have determined that it is "appropriate to consult a standard dictionary." *Allstate Ins. Co. v. Chatterton*, 135 N.C. App. 92, 94-95, 518 S.E.2d 814, 817 (N.C. Ct. App. 1999). If the term is nevertheless "reasonably susceptible to more than one interpretation," then it is ambiguous and

only then is the contract subject to judicial construction. *Id.*; *see also Joyner v. Nationwide Ins.*, 46 N.C. App. 807, 809, 266 S.E.2d 30, 31 (1980) ("[I]n deciding whether the language is plain or ambiguous, the test is what a reasonable person in the position of the insured would have understood it to mean, and not what the insurer intended."). "[A]ny ambiguity or uncertainty as to the words used in the policy should be construed against the insurance company and in favor of the policyholder or beneficiary." *Accardi*, 373 N.C. at 295, 838 S.E.2d at 456.

## III. DISCUSSION

As an initial matter, the Policies do not define the terms "direct," "physical loss," or "physical damage."[4] The Court must therefore turn first to the ordinary meaning of those terms. Merriam-Webster defines "direct," when used as an adjective, as "characterized by close logical, causal, or consequential relationship," as "stemming immediately from a source," or as "proceeding from one point to another in time or space without deviation or interruption." *Direct*, Merriam-Webster (Online ed. 2020). Merriam-Webster defines "physical" as relating to "material things" that are "perceptible especially through the senses." *Physical*, Merriam-Webster (Online ed. 2020). The term is also defined in a way that is tied to the body: "of or relating to the body." *Id.* Webster's Third New International Dictionary defines physical as "of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary." *Physical*, Webster's Third New International Dictionary (2020). The definition from Black's Law Dictionary comports: "Of, relating to, or involving material things; pertaining to real, tangible objects." *Physical*, Black's Law Dictionary (11th ed. 2019). Finally, "loss" is defined as "the act of losing possession," "the harm of privation resulting from loss or separation," or the "failure to gain, win, obtain, or utilize." *Loss*, Merriam-Webster (Online ed.

---

[4] Cincinnati does not contest whether Plaintiffs' losses were "accidental."

2020). Another dictionary defines the term as "the state of being deprived of or of being without something that one has had." *Loss*, Random House Unabridged Dictionary (Online ed. 2020).

Applying these definitions reveals that the ordinary meaning of the phrase "direct physical loss" includes the inability to utilize or possess something in the real, material, or bodily world, resulting from a given cause without the intervention of other conditions. In the context of the Policies, therefore, "direct physical loss" describes the scenario where businessowners and their employees, customers, vendors, suppliers, and others lose the full range of rights and advantages of using or accessing their business property. This is precisely the loss caused by the Government Orders. Plaintiffs were expressly forbidden by government decree from accessing and putting their property to use for the income-generating purposes for which the property was insured. These decrees resulted in the immediate loss of use and access without any intervening conditions. In ordinary terms, this loss is unambiguously a "direct physical loss," and the Policies afford coverage.

The parties sharply dispute the meaning of the phrase "direct physical loss." Cincinnati argues that "the policies do not provide coverage for pure economic harm in the absence of direct physical loss to property, which requires some form of physical alteration to property." Even if Cincinnati's proffered ordinary meaning is reasonable, the ordinary meaning set forth above is also reasonable, rendering the Policies at least ambiguous. Accordingly, in giving the ambiguous terms the reasonable definition which favors coverage, the phrase "direct physical loss" includes the loss of use or access to covered property even where that property has not been structurally altered. *See Accardi*, 373 N.C. at 295, 838 S.E.2d at 456 ("[A]ny ambiguity or uncertainty as to the words used in the policy should be construed against the insurance company and in favor of the policyholder or beneficiary.").

Moreover, it is well-accepted that "[t]he various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect." *See C. D. Spangler Constr. Co. v. Industrial Crankshaft & Engineering Co.*, 326 N.C. 133, 142, 388 S.E.2d 557, 563 (1990). Here, the Policies provide coverage for "accidental physical loss ***or*** accidental physical damage." Cincinnati's argument that the Policies require physical alteration conflates "physical loss" and "physical damage." The use of the conjunction "or" means—at the very least—that a reasonable insured could understand the terms "physical loss" and "physical damage" to have distinct and separate meanings. The term "physical damage" reasonably requires alteration to property. *See Damage*, Merriam-Webster (Online ed. 2020) ("loss or harm resulting from injury to person, property, or reputation"). Under Cincinnati's argument, however, if "physical loss" also requires structural alteration to property, then the term "physical damage" would be rendered meaningless. But the Court must give meaning to both terms.

Finally, nothing in the Policies excludes coverage for Plaintiffs' losses. Notably, it is undisputed that the Policies do not exclude virus-related causes of loss. Cincinnati instead contends that three other exclusions apply: the "Ordinance or Law" exclusion, the "Acts or Decisions" exclusion, and the "Delay or Loss of Use" exclusion. Upon a review of the entire record, the Court concludes that these exclusions, based on their terms and the undisputed facts, do not apply to Plaintiffs' losses as a matter of law.

For these primary reasons, the Court concludes that the Policies provide coverage for Business Income and Extra Expenses for Plaintiffs' loss of use and access to covered property mandated by the Government Orders as a matter of law.

## IV. CONCLUSION

Accordingly, Plaintiffs' Motion for Partial Summary Judgment is GRANTED. This Court certifies, pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure, that this Order represents a final judgment as to Count I of the Second Amended Complaint and is immediately appealable as there is no just reason for delay of any such appeal. **IT IS THEREFORE ORDERED, ADJUDGED AND DECREED AS FOLLOWS**: That partial summary judgment is hereby granted in favor of Plaintiffs and against Cincinnati, jointly and severally, on Count I (Declaratory Judgment).

This the 7th day of October, 2020.

ORLANDO F. HUDSON, JR.
SENIOR RESIDENT SUPERIOR COURT JUDGE

**CERTIFICATE OF SERVICE**

This is to certify that the undersigned has this day served the foregoing Order in the above captioned action on all parties by depositing a copy hereof in a postpaid wrapper in a post office depository under the exclusive care and custody of the United Postal Service, addressed as follows:

STUART M. PAYNTER
GAGAN GUPTA
106 S. Churton Street, Suite 200
Hillsborough, NC 27278
*Counsel for Plaintiffs*

ANDREW A. VANORE III
Post Office Box 1729
Raleigh, NC 27602-1729
*Counsel for Defendant, The Cincinnati Insurance Company*

KENDRA STARK
JUSTIN M. PULEO
421 Fayetteville Street, Suite 330
Raleigh, NC 27601
*Counsel for Defendant Morris Insurance Agency, Inc.*

This the 9th day of October, 2020.

ASSISTANT CLERK OF COURT
DURHAM COUNTY

# Tab 9

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF SAN DIEGO**
**CENTRAL**

**MINUTE ORDER**

DATE: 09/30/2020 TIME: 12:50:00 PM DEPT: C-67

JUDICIAL OFFICER PRESIDING: Martin W. Staven
CLERK: Patricia Ashworth
REPORTER/ERM: Not Reported
BAILIFF/COURT ATTENDANT:

CASE NO: **37-2020-00015679-CU-IC-CTL** CASE INIT.DATE: 05/26/2020
CASE TITLE: **BEST REST MOTEL INC VS SEQUOIA INSURANCE COMPANY [IMAGED]**
CASE CATEGORY: Civil - Unlimited CASE TYPE: Insurance Coverage

---

**APPEARANCES**

---

The Court, having taken the above-entitled matter under submission on 09/25/2020 and having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows:

Plaintiff dismissed Amtrust North America, Inc. for insurance coverage on June 26, 2020, so Amtrust's demurrer is moot.

Defendant Sequoia Insurance Co.'s demurrer to the complaint of plaintiff Best Rest Motel, Inc., dba Holiday Inn Express Old Town complaint is overruled. There are questions outside the complaint whether there is insurance coverage under this policy as a result of the coronavirus pandemic. Judicial notice is granted to defendant's exhibits 1-3, the various executive orders. The court grants judicial notice of exhibit 4, Department of Insurance "FAQ on business interruption insurance and other issues affecting California small businesses", and exhibits 5 and 6, the press releases, but not for the truth of the matters asserted therein.

Plaintiff's request for judicial notice of exhibits 1 and 2 are granted to the extent the County of San Diego Health and Human Services Agency, Public Health Services, Epidemiology and Immunization Services Branch; "County of San Diego – Coronavirus Disease 2019 (COVID-19) Interactive Data Set – Confirmed Cases by City" for the City of San Diego; (accessed September 14, 2020) published data, but not the for truth of the matters asserted.

Plaintiff's objections to the cases cited by defendant in the reply are overruled. There are sufficient facts alleged in the complaint to withstand a demurrer.

Defendant shall file and serve an answer by October 15 , 2020.

# Tab 10

# LORAIN COUNTY COURT OF COMMON PLEAS
**LORAIN COUNTY, OHIO**

**TOM ORLANDO, Clerk**
**JOURNAL ENTRY**
**James L. Miraldi, Judge**

Date 09/29/20 Case No. 20CV201416

FRANCOIS INC
Plaintiff

JEREMY A TOR
Plaintiff's Attorney (216)696-3232

VS

THE CINCINNATI INSURANCE COMPANY
Defendant

SCOTT STEPHENSON
Defendant's Attorney ()-

This matter came before the Court upon the motion of Defendant Cincinnati Insurance Company to dismiss.

Based upon the briefs, the defendant's 12(b)(6) Motion is denied. Before a court may dismiss an action under Civ. R. 12 (B)(6) for failure to state a claim upon which relief can be granted, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery. *O'Brien v. University Community Tenants Union*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. To make this determination, the court is required to interpret all material allegations in the complaint as true and admitted. *Phung v. Waste Management, Inc*, 23 Ohio St.3d 100,102, 491 NE.2d 1114 (1986).

The complaint states claims which arguably fit the terms and conditions of the insurance policy and therefore the claims and defenses need to be developed with a record. The parties should proceed with discovery on liability/coverage while the damages issues are bifurcated. Discovery on damages is held in abeyance until a decision has been made on coverage as the court anticipates Summary Judgment motions will be filed at the conclusion of discovery on the liability/coverage issues. A telephone status call is set for October 27, 2020 at 11:30a.m. Plaintiff shall initiate the telephone conference to all other counsel and then to the court at (440) 328-2393 or (440) 328-2390 at which time the discovery framework and briefing schedule can be determined by agreement.

James L. Miraldi

**James L Miraldi, Judge**

# Tab 11

**IN THE SIXTH JUDICIAL CIRCUIT**
**IN AND FOR PINELLAS COUNTY, FLORIDA**
**CIRCUIT CIVIL DIVISION**

JOHNSTON JEWELERS, INC.

a Domestic Corporation,
Plaintiff,

Case Number: 20-002221-CI

vs.

JEWELERS MUTUAL INSURANCE COMPANY, S.I.

a Foreign Corporation,
Defendant,
_____________________________________/

**ORDER ON DEFENDANTS, JEWELERS MUTUAL INSURANCE COMPANY, S.I. MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

THIS CAUSE came to be heard on Defendants, JEWELERS MUTUAL INSURANCE COMPANY, S.I.'s Motion to Dismiss Plaintiff's Complaint filed on May 28, 2020. The Court having heard the arguments of counsel and being otherwise fully advised in the premises, it is:

ORDERED AND ADJUDGED that:

1. Defendant's Motion is DENIED.
2. Defendant shall have 15 days to file its response to Plaintiff's Complaint from the date of this Order.

DONE AND ORDERED in Chambers at Pinellas County, Florida on this ____ day of September, 2020.

20-002221-CI 9/22/2020 9:01:28 PM
Circuit Judge Amy Williams
20-002221-CI 9/22/2020 9:01:28 PM
Honorable Judge Amy M. Williams

Copies furnished to: William R. Lewis, Esq.
Ronald S. Hayes, Esq.



***ELECTRONICALLY FILED 9/22/2020 9:02:00 PM KEN BURKE, CLERK OF THE CIRCUIT COURT, PINELLAS COUNTY***

# Tab 12

**IN THE FRANKLIN COUNTY, OHIO COURT OF COMMON PLEAS**
**CIVIL DIVISION**

| | | |
|---|---|---|
| SSF II, INC., et al | ) | |
| Plaintiffs | ) | |
| | ) | 20CV-04-002644 |
| vs. | ) | |
| | ) | Judge Michael Holbrook |
| THE CINCINNATI INSURANCE COMPANY | ) | |
| Defendant | ) | |

---

| | | |
|---|---|---|
| 780 SHORT NORTH LLC, et al | ) | |
| Plaintiffs | ) | |
| | ) | 20CV-06-003836 |
| vs. | ) | |
| | ) | Judge Michael Holbrook |
| THE CINCINNATI INSURANCE COMPANY | ) | |
| Defendant. | ) | |

**ENTRY AND ORDER POST STATUS CONFERENCE**

This matter came before the Court for a video status conference on September 8, 2020. There, the Court and counsel discussed the general status of these consolidated cases along with discovery issues. The Judge issued an order with respect to the same which is journalized herein.

Over the defendant's objection, it is hereby ORDERED that pursuant to Civ.R. 12(B), the pending motions to dismiss are hereby converted to motions for summary judgment. Briefing on the motions is stayed until October 29, 2020 at which time a schedule will be set.

It is further ORDERED, over plaintiffs' objections that the parties shall have until

December 1, 2020 to conduct discovery as to liability. Discovery related to damages is hereby bifurcated and stayed pending further order of the Court.

It is further ORDERED that this matter shall come before the Court for a follow up status conference on **October 29, 2020 at 1:30 p.m.** The conference will be held via Zoom with instructions mailed to counsel of record approximately 2 weeks prior to the conference date. Counsel shall be prepared to discuss the status of discovery and a briefing schedule.

**IT IS SO ORDERED.**

*Electronic notification to counsel of record*

Franklin County Court of Common Pleas

| | |
|---|---|
| **Date:** | 09-08-2020 |
| **Case Title:** | 780 SHORT NORTH LLC ET AL -VS- THE CINCINNATI INSURANCE COMPANY |
| **Case Number:** | 20CV003836 |
| **Type:** | ENTRY |

It Is So Ordered.

/s/ Judge Michael J. Holbrook

# Tab 13

RECEIVED
AUG 31 2020
S. HARVEY, JR.
CIVIL TRIAL DIVISION

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

DOCKETED
AUG 31 2020
S. HARVEY, JR.
CIVIL TRIAL DIVISION

| | | |
|---|---|---|
| RIDLEY PARK FITNESS, LLC | : | MAY TERM, 2020 |
| *Plaintiff* | : | NO. 01093 |
| v. | : | COMMERCE PROGRAM |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY | : | CONTROL NO. 20080358 |
| *Defendants* | : | |

**ORDER**

AND NOW, this 31st day of August, 2020, upon consideration of the preliminary objections filed by defendant Philadelphia Indemnity Insurance Company to plaintiff's amended complaint, and any response thereto, it is hereby

**ORDERED**

that the preliminary objections are **OVERRULED, without prejudice.**[1]

Ridley Park Fitness, LI-ORDER
20050109300043

[1] Pursuant to Pa. R.C.P. 1028(a)(4), a party may raise a preliminary objection due to legal insufficiency of a pleading (demurrer). When considering preliminary objections, all material facts and reasonable inferences set forth in the challenged complaint must be admitted as true. Haun v. Cmty. Health Sys. Inc., 14 A.3d 120, 123 (Pa. Super. 2011) (citation omitted). A court may not consider facts that are not contained within the challenged pleading. See Detweiler v. School Dist. Of Borough of Hatfield, et al., 104 A.2d 110, 113 (Pa. 1954). Additionally, a court need not accept conclusions of law. See Dominski v. Garrett, 419 A.2d 73, 75 (Pa. Super. 1980).

This litigation arises from the denial of insurance coverage for business losses at a fitness center as a result of the COVID-19 pandemic and the resulting state and local orders mandating that all non-essential businesses be temporarily closed. Defendant alleges in the instant preliminary objections that plaintiff's failure to attach the insurance agreement in total constitutes a failure to plead, which defendant has cured by attaching the agreement in full, that certain clauses including a virus exclusion and "direct physical loss" bar coverage, and finally, that plaintiff is not entitled to a declaratory judgment.

At this very early stage, it would be premature for this court resolve the factual determinations put forth by defendants to dismiss plaintiff's claims. Taking the factual allegations made in plaintiff's complaint as true, as this court must at this time, plaintiff has



COPIES SENT PURSUANT TO Pa.R.C.P. 236(b) N. ERICKSON 09/01/2020

**BY THE COURT:**

GLAZER, J.

successfully pled to survive this stage of the proceedings. As such, the preliminary objections are overruled.

# Tab 14

Eric L. Harrison - ID #033381993
METHFESSEL & WERBEL, ESQS.
2025 Lincoln Highway, Suite 200
PO Box 3012
Edison, New Jersey 08818
(732) 248-4200
1(732) 248-2355
harrison@methwerb.com
Attorneys for Franklin Mutual Insurance Company
Our File No. 89286 ELH

| | |
|---|---|
| OPTICAL SERVICES USA/JCI, OPTICAL SERVICES USA, LLC, OPTICAL SERVICES USA-WO, RE & LE HOLDING LLC, STONG OD EWING NJ, LLC<br><br>Plaintiffs,<br><br>V.<br><br>FRANKLIN MUTUAL INSURANCE COMPANY<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: BERGEN COUNTY<br>DOCKET NO.: BER-L-3681-20<br><br>Civil Action<br><br>**ORDER** |

**THIS MATTER** having been brought before the Court by way of Motion of Methfessel & Werbel, attorneys for defendant(s), Franklin Mutual Insurance Company, seeking an Order for Dismissal, and the Court having reviewed the moving papers, any opposition thereto, oral argument having been heard, and for other good cause having been shown;

**IT IS** on this **13th day** of **August, 2020**;

**ORDERED** ~~that plaintiff's Complaint and any and all Crossclaims be and is hereby dismissed~~ **DENIED***; and it is further

**ORDERED** that the Court provides a copy of this Order to all counsel of record on this date via eCourts Civil. Movant is directed to serve a copy of this Order within seven (7) days of the date hereof on all parties not served electronically via regular and certified mail return receipt requested.

Hon. Michael N. Beukas, J.S.C.

OPPOSED

*** The Motion is denied for the reasons stated at length on the record.**

# REPORTERS/TRANSCRIBERS TRANSCRIPT TRANSMITTAL

**INSTRUCTIONS:** Forward original to the requesting party with completed original transcript.
Send copies to: Sent("x")
1) Supervisor of Court Reporters with copy of Transcript
2) Administration Office of the Courts, Attn: Chief, Reporting Svs., CN-988, Trenton, NJ 08625
3) Attornies and/or Pro Se (if known)
4) Other ______________________________

TO: REQUESTOR'S NAME/ADDRESS
Eric Harrison 3 Ethel Road Suite 300 Eidson, NJ 08818

CASE NAME (Plaintiffs) v (Defendants)
Optical Services, USA, et al Franklin Mutual Insurance Co

___ Appeal
___ Non-Appeal

LOWER COURT DOCKET TYPE
___ Indictment ___ Accusation ___ Complaint

LOWER COURT NUMBER
3681-20

Transcript Request Date:
8/13/2020

DOCKET NUMBER
A-

COUNTY
Bergen County

COURT
Michael Beukas

Transcript Request Receipt Date
8/13/2020

TRANSCRIPTS FILED HEREWITH

| – | *DATES* | *NO. OF COPIES* | *TOTAL PGS. PER TRANSCRIPT* | *PROCEEDING TYPE* |
|---|---|---|---|---|
| 1 | 8/13/2020 | 0 | 30 | Hearing |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |

***Check, if applicable:**

**Applicant is responsible for filing copies pursuant to Court Rule 2:6-12(a)(d)** ___ Yes ___ No

___ Reporter
xx Transcriber

REPORTER/TRANSCRIBER NAMER (Name of Agency, if applicable)
Phoenix Transcription, LLC
796 Macopin Rd.
West Milford N.J. 07480

REPORTER/TRANSCRIBER (Signature)

TRANSMITTAL DATE
8/14/2020

White: REQUESTING PARTY Blue: CHIEF, REPORTING SERVICES Green: SUPERVISOR Canary: OTHER
Pink: MAINTAIN FOR SELF Gold: ATTORNEY and/or PRO SE


J9286 clh

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: CIVIL PART
BERGEN COUNTY
(HEARD VIA ZOOM)
DOCKET NO: BER-L-3681-20
A.D. #____________________

| | |
|---|---|
| OPTICAL SERVICES USA/ JC1, OPTICAL SERVICES USA, LLC, OPTICAL SERVICES USA-WO, RE & LE HOLDINGS, LLC, STONG OD EWING NJ, LLC, Plaintiffs, vs. FRANKLIN MUTUAL INSURANCE COMPANY, Defendant. | TRANSCRIPT OF MOTION |

Place: Bergen County Justice Center
10 Main Street
Hackensack, New Jersey 07601

Date: August 13, 2020

BEFORE:

HONORABLE MICHAEL N. BEUKAS, J.S.C.

TRANSCRIPT ORDERED BY:

ERIC L. HARRISON, ESQ. (Methfessel & Werbel)

APPEARANCES:

SEAN E. ROSE, ESQ. (Olender Feldman, LLP)
Attorney for Plaintiffs

ERIC L. HARRISON, ESQ. (Methfessel & Werbel)
Attorney for Defendant

Transcriber: Laura Scicutella
Phoenix Transcription, LLC
796 Macopin Rd.
West Milford, NJ 07480
(862)248-0670

Audio Recorded
Recording Opr: Alexa D'Angelo

INDEX


| | PAGE |
|---|---|
| Colloquy re: Housekeeping | 3,7,30 |
| ARGUMENTS: | |
| BY: Mr. Harrison | 5,7,15 |
| BY: Mr. Rose | 13 |
| THE COURT: | |
| Decision | 18 |

(Proceeding commenced at 9:30:49 a.m.)

THE COURT: Superior Court of the State of New Jersey, Bergen County Vicinage, clerk recording, Alexa D'Angelo law clerk, docket number BER-L-3681-20, caption is Optical Services USA/JCI (sic), Optical Services USA, LLC, Optical Services USA-WO, and Re and Le Holdings, LLC, Stong OD Ewing NJ, LLC versus Franklin Mutual Insurance Company. Judge Michael N. Beukas, chambers 453. The time is approximately 9:32 a.m. May I have the appearances of counsel for the record, please, starting with the plaintiff?

MR. ROSE: Good morning, Your Honor. Sean Rose from the law firm of Olender Feldman on behalf of plaintiff, Optical Services USA/JC1, Optical Services USA, LLC, Optical Services USA-WO, Re and Le Holdings, LLC, and Stong OD Ewing NJ, LLC, collectively plaintiffs, Your Honor.

THE COURT: Good morning, Counsel.

MR. ROSE: Good morning.

MR. HARRISON: Good morning, Judge. Eric Harrison, Methfessel and Werbel, on behalf of Franklin Mutual Insurance Company.

THE COURT: Good morning, Counsel. Okay, gentlemen, just a -- a couple of --

RECORDING: (Indiscernible) --

THE COURT: -- reminders before we --

RECORDING: -- is now in the conference.

MR. HARRISON: Your Honor, this is Eric Harrison speaking. As a courtesy, I should let the Court know I do have a few folks dialing in. They've all been instructed to keep their phones on mute. Various FMI representatives and a colleague of mine will be listening in but will not be participating.

THE COURT: Okay, very good.

For purposes of our established record here today, gentlemen, when you do speak at oral argument, I do need you to identify yourself in between oral arguments so that the transcription service can clearly identify which attorney is speaking.

When you are referencing an oral argument to any specific controlling case, I need you to identify that case for the record and pursuant to Rule 1:36-3, I need you to identify for the record whether that is a published opinion in the State of New Jersey versus an unpublished opinion and whether or not you are citing to any law of any other jurisdiction including the US Supreme Court so that I can identify for the record as to whether or not any of the law is controlling in this case for purposes of oral argument.

In addition, we are on a Polycom speaker

today and at times it may be difficult for you to hear me and I may need to interject to pose a question to either attorney so I may have to elevate my voice so that you can hear me clearly. So please don't misconstrue me elevating my --

RECORDING: (Indiscernible) --

THE COURT: -- voice --

RECORDING: -- is now in the conference.

THE COURT: Okay, gentlemen, I -- if I need to elevate my voice, it's for purposes of the Polycom picking up my voice so that you can hear it, okay.

So I have before me a Motion to Dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 4:6-2(e) filed by the defendant, Franklin Mutual Insurance Company. So, Mr. Harrison, this is your Motion. You may proceed.

MR. HARRISON: Yes, sir. Thank you, Your Honor. We are all aware, I know plaintiffs' counsel is aware, certainly my firm as an insurance defense firm is well aware of the fast-moving nature of developments in insurance litigation and other litigation over Covid-19. Two significant events happened yesterday and they're both worthy of mention. The first is, and this is not within the record, but the Court -- it's

not important to the Court's decision on the policy language, but it's -- it's significant background. The multi-district litigation panel of the United States District Court denied a nation-wide Motion to Consolidate these business interruption litigations that are venued in various Federal Courts around the country essentially on the basis that the policy language differs from policy to policy. Even though a lot of insurers use (indiscernible) income and would other insurers, there is still significant differences between those forms and the facts of particular cases also can determine whether there would be coverage and to what extent.

The second significant thing to happen yesterday was the issuance of the decision that Mr. Rose brought to the Court's attention, and I don't have any objection to his filing it yesterday because it didn't come out until yesterday and I have had ample time to review it. It's the Studio 417 case from U.S. District Court, Western District of Missouri, Southern Division. This opinion, which I'm not going to significantly disagree with, demonstrates the wisdom of the MDO panel in refusing to consolidate because the denial of the Motion to Dismiss based on the allegations in that complaint bespeaks the importance

of policy language differing from policy to policy and alleged facts differing from complaint to complaint.

I should ask as a courtesy whether the Court has any objection to me talking about this case that Mr. Rose sent yesterday.

THE COURT: What I would like you to do, Counsel, is argue your Motion to Dismiss. This Court is bound by the implications of Rule 1:36-3. While the parties felt compelled to cite to numerous other jurisdictions with respect to their arguments, their respective arguments both on the Motion and in the Opposition, this Court is bound by legal precedent within the State of New Jersey, namely the Appellate Division, and the New Jersey Supreme Court. With respect to the US Supreme Court, this -- this Court also takes precedent from the US Supreme Court for controlling decisions. So this Court will give whatever weight is necessary to whatever arguments reflect in the controlling legal precedent set forth in this state as opposed to other states. So you may proceed with the argument.

MR. HARRISON: Okay, thank you, Your Honor. I just -- I just wanted to make sure that the Court didn't want me to completely disregard this decision. But I'm going to highlight it simply to contrast it

with a case we're looking at in order to argue my position under New Jersey law.

The Studio 417 decision describes a policy which defines a covered cause of loss, and that's at page 2 of the opinion, as follows, "Accidental direct physical loss or accidental direct physical damage." It goes on to say on the same page, "The policies do not include and are not subject to any exclusion for losses caused by viruses or communicable diseases."

Now, I want to be clear about something. I want to be clear about a point of agreement that Franklin Mutual has with the plaintiffs in this case. At paragraph 36 of the Complaint filed in this case, plaintiffs recite as follows, "There is no known instance of Covid-19 transmission or contamination within the premises of plaintiffs' businesses." Now, the declamation of coverage letter that FMI issued prior to the Complaint being filed in this case because the Complaint challenges that declamation of coverage find it among relevant policy provisions the exclusion of 12(c) for contamination by any virus, et cetera. Because the complaint expressly asserts that there was no contamination and because it is our universal duty to read as accurate all facts alleged in the complaint and I agree that the contamination exclusion would not

apply to this case. If the complaint had alleged that there was contamination on the premises, then there probably would be direct physical loss, but there would also be exclusion of coverage under that virus exclusion. So what we're really focused on is the policy language. In Studio 417, the definition of loss there was physical loss or physical damage.

THE COURT: Okay, but we're concerned about New Jersey. We're not concerned about the Western District of Missouri; correct?

MR. HARRISON: That is true, Your Honor, but we are concerned about policy language defining direct physical loss, --

THE COURT: Okay, but the --

MR. HARRISON: -- but I'm -- I'm happy to take it --

THE COURT: -- definition (indiscernible) --

MR. HARRISON: -- to our policy language.

THE COURT: -- definition has not been established by any court in this state with the exception of the Wakefern case; correct?

MR. HARRISON: I think that is absolutely correct.

THE COURT: Okay, I just want to establish that for purposes of the record.

MR. HARRISON: Okay, so back to our policy. The business interruption loss that -- of which plaintiffs seek to avail themselves governs loss of income resulting from direct covered loss. We go to page 9 of the policy form which expressly defines direct covered loss as follows, "The fortuitous direct physical loss as described in Part 1(c), General Cause of Lost Conditions, Coverages A, B, C, which occurs at described premises occupied by you." Now, the definition is (indiscernible) if it didn't refer -- if it didn't cross-reference another definition, then we'd be fighting over whether the closure of a business because of a risk of virus spread would constitute a fortuitous direct physical loss.

However, because it cross-references the description of direct covered loss that's also in the policy at page 8. We go to the more detailed definition. Covered loss, "Means fortuitous direct physical damage to or destruction of covered property by a covered cause of loss." The requirement of direct physical damage to or destruction of (indiscernible) --

RECORDING: (Indiscernible).

MR. HARRISON: -- requirement of direct physical damage to or destruction of covered property distinguishes this case from the <u>Studio 417</u> case in

that there is the physical damage or destruction requirement that was absent in that case which also had --

RECORDING: (Indiscernible) is now in the conference.

MR. HARRISON: -- I apologize -- which also had the open-ended concept of loss which was not defined. Our policy defines loss as requiring that physical impact.

The Court has reviewed Wakefern I know and the -- the cases -- the New Jersey cases discussed in our brief I agree that there is no case directly on point construing the -- this precise policy language in the context a claim where there was a closure of a business because of the risk of contamination by a virus. But I think that the application of loss that's set forth in New Jersey and in the other jurisdictions we've cited as persuasive, although not binding, compels the conclusion that this did not meet the policy definition of direct covered loss to satisfy coverage.

THE COURT: Counsel, let me pose -- let me pose one question to you. Why didn't the policy then have specific exclusions for an event such as this? Meaning for virus proliferation.

MR. HARRISON: Well, it -- it precisely has an exclusion for virus proliferation. It does not have an exclusion for a closure of business based on the risk of virus proliferation. I can't speak to the drafters of the policy other than to say this is an unprecedented event. First in my lifetime. First in my parents and our parents. So, yeah, in -- in an ideal world all potential cataclysmic risks could be underwritten and determined in advance as to what we're going to cover and to what extent or whether there should be any coverage at all, but before we get to the absence of an exclusion, and I agree there is no exclusion that would apply on the facts as alleged in this Complaint, we have to satisfy the coverage definition first.

THE COURT: You can proceed, Counsel. Thank you.

MR. HARRISON: I -- Your Honor, to -- to be candid, I know you've reviewed the papers. I'm happy to address any further questions the Court may have or simply reserve an opportunity to respond to my colleague. I -- I think between our papers and what I've had to say this morning that I've stated our case.

THE COURT: Thank you, Counsel. Okay, Mr. Rose, your response?

MR. ROSE: Thank you, Your Honor. And just to try to make sure that there's a clean record virtually, this is again Sean Rose, Olender Feldman, on behalf of plaintiff.

So contrary to the insurance industry's well rehearsed talking points and -- and Mr. Harrison has a very good brief and very good argument, the simple fact is that plaintiff and the many other in the -- and (indiscernible) plaintiffs purchased business owners policies to insure against, among other things, unexpected business interruptions. And what happened back in March, as we all know because we all lived through it, that's about as unexpected as you get. Plaintiffs were forced to close their businesses because the executive order issued by the State -- well, the State pertinent to here, but issued across the country in emergency response to the pandemic found that there is a dangerous condition on plaintiffs' property. As a result of those orders, the plaintiffs closed. All residents were told to stay at home and (indiscernible) claims (indiscernible).

Now, as Mr. Harrison pointed out, the briefing reflects that there are really two main points of argument that -- that I'll hit quickly because they are recited at length in the brief is the first

(indiscernible) on the direct physical loss issue. We know from, and just to again bide by Your Honor's directive, we know that under the Gregory Packaging, Inc. versus Travelers Property Casualty Company of America case, which is an unpublished case, but from the District of New Jersey and cited in both Mr. Harrison's and our brief, we know that a dangerous condition on the property can constitute a physical loss. Now, here, we have an executive order that found that plaintiffs' businesses were deemed unfit and unsafe because of a dangerous condition. Plaintiffs' loss of income caused by the closure orders concluding that there was a dangerous condition on the property is a direct physical loss. Alternatively, if we wanted to get into the legal standard, at a minimum, it is plausible the plaintiffs have alleged a direct physical loss here which should defeat a (indiscernible) Motion and allow plaintiffs to pursue discovery, among other things, to discern the true intent behind policy terms which, in some cases, points to coverage but in other cases it may be ambiguous.

The second point would be the civil authority coverage and I -- I think here, the Western District of Missouri case has instructed, and I'll get to that in a second, here we -- we, again, we know what happened.

We all lived through it. The closure orders forced plaintiffs to close and banned occupancy of all non-essential businesses. In doing so, the closure orders necessarily not only affected plaintiffs' businesses, but they affected all -- all properties around plaintiffs. It was a stay-at-home order. Unless it was an essential business, everything was closed. It's alleged -- it -- it's in the Motion and, you know, beyond that, Your Honor, we all lived through it. We were all there. So, again, at a minimum, it is plausible that plaintiffs are entitled to (indiscernible) coverage here. And unless Your Honor has any questions, I know the briefing was fairly detailed.

THE COURT: Thank you, Mr. Rose. You know, at the outset, gentlemen, I do commend the both of you with respect to a very, very difficult topic and concept in the State of New Jersey with regard to the interpretation of insurance law. I did find that the respective briefs were very well drafted.

Mr. Harrison, do you have a reply at this point?

MR. HARRISON: Briefly, Your Honor, yes. Mr. Rose says the executive order for -- forced closure based on a finding that there was a dangerous condition

on plaintiffs' property. That's -- that's simply not the case. The -- the Complaint does not allege that. I understand what he's saying. It -- it's a -- it's a directive closing down non-essential businesses based on the risk that putting people in proximity to each other indoors could result in transmission of the virus, could -- it could result in the virus sitting on a piece of equipment in one of the plaintiffs' examining rooms, but the Complaint in this case expressly alleges that there has been no known instance of Covid-19 transmission or contamination.

I -- I get it that this is business interruption insurance and to quote one of the judges I appeared before in my first year arguing coverage motion, he said, Mr. Harrison, before we turn to the policy terms, everybody knows that when an insured buys insurance for something, their reasonable expectation is that they're going to be covered for whatever might befall them, but then we got to go to the policy language and if indeed coverage was determined by the name of the coverage, business interruption, well, then the insurance industry loses and FMI loses this case because we're not disputing that there was business interruption. Although if we were to have to dig deeper, we would probably have a dispute over whether

plaintiffs were non-essential businesses, but that's not what this Motion is about. The law requires that we look carefully at the policy language. And with reference to Gregory Packaging, we're talking about the release of ammonia into the air, talking about something physically occurring and I think it's -- it's clear from the plain policy language and the meaning of the terms, which are precisely defined in the policy, that in this instance under this policy based on these allegations there is no direct covered loss.

In -- in asking for discovery to determine the true intent behind policy terms, right, that's something you need to speak about briefly. When policy language is clear, I am not aware of any precedent which would support denial of a Motion to Dismiss on the basis that the plaintiff is entitled to conduct discovery to see what the drafter of the document, who I can tell the Court was not -- is not an employee of FMI, had in mind when defining direct covered loss or covered loss.

There -- there is -- in New Jersey we do have a -- a big case called Morton International which has to do with pollution exclusions and that's where our courts created this -- the concept of regulatory estoppel where essentially the insurance industry

lobbied to insert a particular form of coverage within a policy with an exclusion for -- that applied to environmental losses and essentially the courts found, hey, you came to the Department of Banking and Insurance putting forth this policy language suggesting it would do something and then you went to court and suggested otherwise. There is no such allegation in this case. I haven't seen any such allegation even made in the press or -- or by the various (indiscernible) or -- or in any case that's being litigated that I'm aware of. When the plain policy terms apply plainly and directly to the facts asserted, I'm not aware of any legitimate basis for denying a Motion based on the facts accepted as true in the pleading on the basis that plaintiff wishes to take discovery to see what the defendant meant by policy language that somebody else wrote which the defendant adopted if the plain language controls and is unambiguous and I submit that it does control and it is unambiguous here.

THE COURT: Thank you. Gentlemen, thank you, very much. I'm prepared to rule on this Motion.

This matter comes before the Court on a Motion Seeking Dismissal of the plaintiffs' Complaint with prejudice pursuant to Rule 4:6-2(e). The Court

begins with a few general observations concerning the standards governing dismissal motions under Rule 4:6-2(e) by citing Flinn v. -- Flinn v. Amboy National Bank, 40 -- 436 N.J.Super. 274 (App. Div. 2014), "In reviewing a complaint dismissed under Rule 4:6-2(e), the inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint," citing Printing Mart-Morristown versus Sharp Electronics Corp., 116 N.J. 739 at page 746 (1989) and Rieder versus Department of Transportation, 221 N.J.Super. 547 at page 552 (App. Div. 1987).

The essential test as set forth in Green versus Morgan Properties, 215 N.J. 431 at page 451 (Sup. Ct. 2013) is, "Whether a cause of action is 'suggested' by the facts," citing Printing Mart-Morristown versus Sharp Electronics Corp., 116 N.J. at 746 quoting Velantzas versus Colgate-Palmolive Co., 109 N.J. 189 at page 192 (1988).

"A reviewing court searches the complaint in depth and with liberality to ascertain whether the fundamental of a cause of action may be gleaned, even from an obscure statement of claim, opportunity being given to amend if necessary," citing Di Cristofaro versus Laurel Grove Memorial Park, 43 N.J.Super. 244 at page 252 (App. Div. 1957).

In the case of Rule 4:6-2(e), Dismissals, "The Court is not concerned with the ability of the plaintiffs to prove the allegation contained in the complaint," citing Somers Construction Co. versus Board of Education, 198 F.Supp. 732, 734 (Dis. NJ. 1961). Instead,

"The plaintiffs are entitled to every reasonable inference of fact and the examination of a complaint's allegations of fact required by the aforestated principle should be one that is at once painstaking and undertaken with a generous and hospitable approach,"

citing Green versus Morgan Properties, 215 N.J. 431 at page 452 quoting Printing Mart-Morristown versus Sharp Electronics Corp., 116 N.J. at 746.

Notwithstanding this indulgent standard, "A pleading should be dismissed if it states no basis for relief and discovery would not provide one," citing Rezem Family Associates, LP versus Borough of Millstone, 423 N.J.Super. 103 at page 113 (App. Div. 2011), cert. denied and the appeal was dismissed at 208 N.J. 366 (2011). See also Sickles versus Cabot Corp. 379 N.J.Super. 100 at page 106 (App. Div. 2005) cert. denied at 185 N.J. 297 (2005).

In those rare instances, as cited in Smith

versus SBC Communications, Inc., 178 N.J. 265 at page 282 (2004), a motion to dismiss pursuant to Rule 4:6-2(e) ordinarily is granted without prejudice. See Hoffman versus Hampshire Labs Incorporated, 405 N.J.Super. 105, 116 (App. Div. 2009).

The defendant, Franklin Mutual Insurance Company, hereinafter FMI, issued a business owners policy to plaintiff, Optical Services USA/JC1 under policy number SBP2598006 with effective dates of October 5, 2019 to October 5, 2020. FMI issued the business owners policy to the plaintiff, Stong OD Ewing NJ, LLC, hereinafter Stong OD, bearing policy number SBP2613680 with effective dates of April 1, 2020 to April 1, 2021. Optical Services USA/JC1 and Stong OD filed separate claims seeking loss of business income caused by the closure mandated by Governor Murphy's March 21, 2020 Executive Order Number 107 suspending the operation of non-essential retail businesses on the account of the Covid-19 pandemic. Plaintiffs closed their businesses on March 20, 2020 and have not reopened to date. Plaintiffs allege that Executive Order Number 107 mandated the closure of their businesses. FMI issued letters dated April 6, 2020 and April 14, 2020 to Optical Services USA/JC1 and Stong OD denying their claims for business income and related

expenses. Plaintiffs, Optical Services USA, LLC, Optical Services USA-WO, Re and Le Holdings, LLC were not named insureds on either policy.

Both policies contained the BU04010110 Business Owners Policy Form. The plaintiffs allege that the -- the plaintiffs allege that Optical Services USA/JC1, Optical Services USA, LLC, Optical Services USA-WO, Re and La -- and Le Holding, LLC and Stong OD Ewing NJ, LLC purchased business interruption insurance from insurers to protect their business from an -- an unanticipated crisis. The plaintiffs further allege that the policies issued by FMI provide coverage for loss of income resulting from a necessary interruption of plaintiffs' businesses caused by direct covered losses and temporary closures required by orders of a civil authority.

A Complaint for a Declaratory Judgment in this action was filed on June 25, 2020. The Complaint also included a Demand for Trial by Jury. No answer has been filed by the defendant, FMI. Therefore, the discovery end date has not been established in this case.

On July 15, 2020, the defendant, FMI, filed a Motion Seeking Dismissal of the Complaint pursuant to Rule 4:6-2(e). Within days of filing the Complaint,

the defendant, FMI, filed the within Motion to Dismiss. It is clear that there is no established record in this case and there has been no discovery presented to the Court for consideration with respect to the arguments and events by respective legal counsel. Notwithstanding same, the defendants argued three points before this Court. The first legal argument is that the Court should dismiss the complaint for failure to state a legally cognizable claim. The second legal argument is that the plaintiffs did not sustain direct physical loss or direct physical damage to or destruction of covered property precluding coverage for business income or extra expenses under the FMI policy. Lastly, the defendants argue that the plaintiffs occupancy of their respective properties was not prohibited by civil authorities because of a loss at a local premises not owned or occupied by the plaintiffs precluding civil authority coverage under the FMI policies.

The plaintiffs argue before this Court that they state claims for coverage under the policies because they suffered a direct covered loss and were forced to close their business by order of a civil authority. Plaintiffs further allege that they state claims for loss of income coverage because they

suffered a direct covered loss under the policy and they state claims for civil coverage because the closure order prohibited the plaintiffs from accessing their business.

Naturally, each of the respective arguments advanced by the parties requires a fact-sensitive analysis wherein the respective parties have failed to present a sufficient record before this Court for a legal determination of their respective positions. There has been no discovery produced to the Court for consideration, no affidavits, no certifications, or sworn testimony derived from depositions. In fact, discovery has not been undertaken by the parties with respect to the declaratory relief sought in the Complaint. Notwithstanding these deficiencies, the Court will endeavor to address the legal arguments advanced by the respective parties on the extremely limited record provided to the Court.

The defendant, FMI, concedes that the plaintiffs' business operations were interrupted by an executive order based on the risk of the Covid-19 virus transmission throughout the State of New Jersey. The pivotal issue before this Court is the parties' interpretation of the subject policy language and FMI's claim denial premised on a narrow interpretation of the

terms of the subject policies. The issue before this Court is the interpretation of a direct covered loss under the policy and whether or not there was physical damage to the plaintiffs' business.

The plaintiffs argue that the loss of physical functionality and the use of their business constitutes a covered loss under the policies. The plaintiffs argue that Governor Murphy's executive order prohibited access to the plaintiffs' premises.

FMI argues that the plaintiffs failed to state a claim for civil authority coverage because the complaint does not allege that property damage occurred elsewhere leading to the loss of access to plaintiffs' business. The defendant acknowledged in their moving papers that presumably the plaintiffs will argue that while their properties were not physically damaged, they sustained a physical loss by operation of the Governor's executive order. FMI argues that the plaintiffs' loss of use of their respective properties does not constitute a direct physical loss and therefore is not a direct covered loss defined by the policies.

A simple review of the moving papers indicates that the defendant has not provided this Court with any controlling legal authority to support

their version of the interpretation of the defined terms in the policy. In fact, there is limited legal authority in the State of New Jersey addressing this issue. This is not surprising to the Court as the State of New Jersey was recently faced with a historic event which was unprecedented with respect to the losses sustained by businesses across the State of New Jersey due to the proliferation of the Covid-19 pandemic. The defendant argues that there is a plain meaning of "direct physical loss" and the closure of the plaintiffs' business does not qualify for business -- I'm sorry, qualify for purposes of coverage. This is a blanket statement unsupported by any common law in the State of New Jersey or by a blanket review of the policy language. Moreover, there has been no discovery taken in this matter which would provide guidance to the Court with respect to a Motion to Dismiss filed under Rule 4:6-2(e).

Pursuant to the legal authority recited by this Court with regard to the standards associated with filing such a motion, the plaintiff should be permitted to engage in issue-oriented discovery and also be permitted to amend its complaint accordingly prior to an adjudication on the merits of any policy language. Such a motion is premature at best.

It is noteworthy to mention that the plaintiffs' argument set forth to this Court that the loss of use of their business because the State of New Jersey deemed all non-essential businesses unsafe constitutes a direct covered loss under the policy is the pivotal issue in the absence of any issue-oriented discovery on this topic is whether direct physical loss and direct physical damage encompasses closure for businesses that bears no specific -- relationship to a specific condition on the property pursuant to an executive order. The plaintiffs counter that argument by alleging that the executive order of the Governor deemed all non-essential businesses unsafe given the risk of transmission of Covid-19 thus the closure order had a specific relationship to a specific condition within the plaintiffs' business.

The plaintiffs provide a citation from <u>Wakefern Food Corp. versus Liberty Mutual Fire Insurance Company</u>, 406 <u>N.J.Super</u>. 524 (App. Div. 2019) to support their argument. Their argument based on the holding of <u>Wakefern</u> is that there was a finding of coverage for a grocery store that lost power when an electrical grid and transmission lines were physically incapable of performing their essential function of providing electricity even though they were not

necessarily damaged. The Court in Wakefern did hold that,

"Since the term "physical" can mean more than material alteration or damage, it is incumbent on the insurer to clearly and specifically rule out coverage in the circumstances where it was not to be provided."

Citing Wakefern versus Liberty Mutual Insurance Company, 406 N.J.Super. at 542. Also citing Customized Distribution Services versus Zurich Insurance Co., 373 N.J.Super. 480 at page 491 (App. Div. 2004), cert. denied at 183 N.J. 214 (2005).

The Court finds such an argument compelling for purposes of surviving a Motion to Dismiss pursuant to Rule 4:6-2(e) in the absence of any complete record for disposition. Again, the Court notes in the absence of the legal precedent set forth in Wakefern, there is a lack of controlling legal authority presented to the Court for consideration in this regard.

"When interpreting insurance contracts, the intention of the parties must be determined from the language of the policy," citing Stone v. Royal Insurance Company, 211 N.J.Super. 246 at page 248 (App. Div. 1986). "When the terms of the contract are clear and unambiguous, the Court must enforce the contract as written." That is an incitation at page 248.

The language which forms the basis of the complaint and the filing of a Motion to Dismiss is subject to further analysis and interpretation. By operation of the distinct and opposite interpretations of the language set forth before the Court by the parties with no other clarity from the record having been established to date, which the Court notes is largely non-existent, this Court reaches the inevitable conclusion solely for purposes of disposition of this Motion that the plaintiff should be afforded the opportunity to develop their case and prove before this Court that the event of the Covid-19 closure may be a covered event under the Coverage C, Loss of Income, when occupancy of the described premises is prohibited by civil authorities. There is an interesting argument made before this Court that physical damage occurs where a policy holder loses functionality of their property and by operation of civil authority such as the entry of an executive order results in a change to the property.

The plaintiffs are offering in advancing in a novel theory of insurance coverage in this matter that warrants a denial of the Motion to Dismiss at this early stage of the litigation. As such, this Court must afford the plaintiffs an opportunity to engage in

issue-oriented discovery with FMI in order to fully establish the record with respect to direct covered losses and to amend the Complaint accordingly if required. To that end, the Motion to Dismiss is denied.

Gentlemen, I will have an order prepared and most likely uploaded by this afternoon. Again, I want to thank you for your briefs and I thank you for your legal arguments here today.

MR. HARRISON: Thank you, Your Honor. Have a good weekend.

THE COURT: Thank you, gentlemen.

(Proceeding concluded at 10:08:29 a.m.)

* * * * *

CERTIFICATION

I, Laura Scicutella, the assigned transcriber, do hereby certify the foregoing transcript of proceedings on CourtSmart, Index No. from 9:30:49 to 10:08:29, is prepared to the best of my ability and in full compliance with the current Transcript Format for Judicial Proceedings and is a true and accurate non-compressed transcript of the proceedings, as recorded.

/s/ Laura Scicutella
Laura Scicutella

AD/T 685
AOC Number

Phoenix Transcription LLC
Agency Name

8/14/2020
Date