UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| PROCACCIANTI COMPANIES, INC. and TPG HOTELS & RESORTS, INC., <br> *Plaintiffs,* <br><br> v. <br><br> ZURICH AMERICAN INSURANCE COMPANY, <br> *Defendant.* | ) ) ) ) ) ) CASE NO.: 1:20-cv-00512 ) ) ) ) ) |

### DEFENDANT'S RESPONSE TO
### BRIEF OF AMICUS CURIAE UNITED POLICYHOLDERS

Zurich American Insurance Company ("Zurich") submits the following brief in response to United Policyholders' brief as *Amicus Curiae* [ECF No. 19] ("Amicus Brief").[1]

**I. COURTS HAVE CONSISTENTLY AGREED WITH ZURICH THAT THE AMENDATORY ENDORSEMENT – LOUISIANA DOES NOT MODIFY THE POLICY OUTSIDE LOUISIANA**

The Amicus Brief repeats the argument that Plaintiffs made in opposition to Zurich's Motion to Dismiss – that the Court should apply the Policy's Louisiana Endorsement without geographic restriction. Amicus Brief at 1; Opp. to Mot. to Dismiss [Entry No. 17] at 10. Specifically, the Amicus argues that the Court must ignore the word "Louisiana" in the Louisiana Endorsement because of Policy § 6.20.

---

[1] Other courts, considering similar motions, have noted that this Amicus's "participation would not be beneficial to the Court" where it merely "sets forth arguments similar to those in [insured's] pleading and opposition" and "does not offer a unique perspective or information beyond that provided by the parties." *Motiv Grp., Inc. v. Cont'l Cas. Co.*, 2021 WL 1240779, at *5 (C.D. Cal. Apr. 1, 2021). *See also HT-Seattle Owner LLC v. Am. Guarantee & Liab. Ins. Co.*, 2021 WL 2206480, at *2 (W.D. Wash. June 1, 2021) (granting similar motion to dismiss and noting that the "Court has reach[ed] its conclusions without reference to United Policyholders' proposed Amicus brief," denying leave to appear as moot); *Dakota Girls, LLC v. Philadelphia Indem. Ins. Co.*, 2021 WL 858489, at *3 (S.D. Ohio Mar. 8, 2021) (refusing to consider Amicus's brief where, as here, briefing on the motion closed prior to Amicus seeking leave).

1

The Amicus argues that Zurich attempts to "upend long-established principles of insurance policy interpretation" by arguing the "Amendatory Endorsement – Louisiana" is limited in application to Louisiana property. Amicus Brief at 1. The Amicus is wrong, which is why several courts have considered this argument and rejected it as explained below.

Indeed, rather than ignoring the rules of contract interpretation, Zurich asks the Court to apply them. Long-established principles of insurance policy interpretation require an insurance policy be considered in its *entirety*, rather than viewing individual words in isolation or taken out of context to establish ambiguity. *Cheaters, Inc. v. United Nat. Ins. Co.*, 41 A.3d 637, 645 (R.I. 2012). Moreover, "a court must favor interpretations which give meaning and effect to every part of a contract and reject those which reduce words to mere surplusage." *Systemized of New England, Inc. v. SCM, Inc.,* 732 F.2d 1030, 1034 (1st Cir. 1984). A court shall apply the policy's clear and unambiguous language where the insured's claimed loss falls within the policy's exclusionary language. *See, e.g.*, *Glocester Country Club v. Scottsdale Ins. Co.*, 2021 WL 3508605, at *4 (D.R.I. Aug. 5, 2021) (Sullivan, M.J.) (applying pollution exclusion in insured's liability policy).

The Amicus's reading of the Policy to remove geographic identifiers from 31 state-specific endorsements would cause numerous conflicts rendering some terms meaningless and others surplusage, which would upend long established principles of policy interpretation. Only Zurich's reading of the Policy would allow the Court to give meaning to all Policy terms. *See* Reply in Supp. of Mot. to Dismiss, ECF No. 20 at 11–12.

Recently, in *Boscov's Department Store, Inc. v. American Guarantee and Liability Ins. Co.,* 2021 WL 2681591, at *9 (E.D. Pa. June 30, 2021), the Eastern District of Pennsylvania found this exact Contamination Exclusion is "unambiguous and certainly applies to COVID-19" and

rejected "[Plaintiff's] attempts to sidestep the exclusion by pointing to the Policy's 'Amendatory Endorsement – Louisiana.'"  The court was "not convinced" the amended definition of "Contamination" found in the Louisiana Endorsement applied to the entire Policy and found, "[h]ad the parties intended to remove 'virus' from the Contamination provision, they could have done so with a general endorsement that was not limited to a single state." *Id.* (quoting *Manhattan Partners, LLC v. Am. Guarantee & Liab. Ins. Co.,* 2021 WL 1016113, at *2 n.3 (D.N.J. Mar. 17, 2021).  The District of New Jersey, in *Manhattan Partners v. Am. Guarantee & Liab. Ins. Co., LLC,* 2021 WL 1016113, at *2 n.3 (D.N.J. Mar. 17, 2021), similarly rejected the argument made by the Amicus.  "This Court is unpersuaded by Plaintiffs' argument that the Contagion [sic] exclusion has been modified by an endorsement to the Policy which removed the word 'virus' and, therefore, is inapplicable here.  The endorsement to which Plaintiffs refer is titled 'Amendatory Endorsement – Louisiana' and appears in a list of state-specific endorsements." *Id.*  Similarly, the court in *Firebirds Int'l, LLC v. Zurich Am. Ins. Co.,* No. 2020-CH-050360, at *10 (Ill. Cook Cnty. Apr. 19, 2021), rejected the argument that the Louisiana Endorsement modified the entire Policy because, "[w]hile an ordinary person would find the inclusion of the endorsement somewhat curious, such a person would also find the endorsement ultimately meaningless due to [Plaintiff's] lack of insured properties in Louisiana.  Despite including the endorsements, Zurich elected not to change the 'Contamination' exclusion in the body of the policy.  Therefore, the Court rejects [Plaintiff's] argument." (Attached as Ex. A.)

The word "Louisiana" in the Louisiana Endorsement is more than a mere title.  It is an essential and substantive term of the endorsement and an obvious geographic reference of the state to which it applies.  The Amicus's strained interpretation must be rejected. *See Derderian v. Essex Ins. Co.*, 44 A.3d 122, 128 (R.I. 2012) (court must "'refrain from engaging in mental gymnastics

or from stretching the imagination to read ambiguity into a policy where none is present'" (internal citation omitted)).  Ignoring the word "Louisiana," and common sense, creates irreconcilable conflicts (see Reply Brief at 11–12), renders certain terms irrelevant and surplusage (see Reply Brief at 11–13), and ignores the fact that insurance is regulated at the state level and an endorsement approved by one states' regulator cannot override the approval of the Policy approved by another state without the endorsement (Reply Brief at 10).  For all of these reasons, it is the Amicus that is asking the Court to ignore established principles of contract interpretation, not Zurich.

## II. THE CONTAMINATION EXCLUSION UNAMBIGUOUSLY PRECLUDES COVERAGE

The Amicus argues that the Contamination Exclusion does not apply because Plaintiffs' losses were allegedly caused by "[t]he Governmental Orders, the damage caused by COVID-19, the Pandemic and the transmission of COVID-19."  Amicus Brief at 5.  However, the overwhelming majority of courts have already rejected the argument that virus exclusions do not apply to the Coronavirus Pandemic.  *See, e.g.*, *Newchops Rest. Comcast LLC v. Admiral Indem. Co.,* 507 F. Supp.3d 616, 627–28 (E.D. Pa. Dec. 17, 2020) ("The lack of specific reference to a pandemic in the policy does not render the [virus exclusion] provision ambiguous… In any event, there is no real distinction between 'virus' and 'coronavirus pandemic.'") (internal citations omitted); *LDWB # 2 LLC v. FCCI Ins. Co.*, 2021 WL 2744568 (W.D. Tex. July 1, 2021) ("The lack of a specific reference to a pandemic in the Policy does not render the provision inapplicable because 'there is no real distinction between "virus" and "coronavirus pandemic.") (citing *Newchops Rest.*, 507 F. Supp. 3d at 628).

Similarly, the overwhelming majority of courts have already held that substantially similar virus exclusions preclude coverage for losses allegedly caused by the governmental shutdown

4

orders because such orders were prompted by COVID-19. *See, e.g.*, *OTG Management PHL LLC v. Employers Ins. Co. of Wausau*, 2021 WL 3783261, at *6 (D.N.J. Aug. 26, 2021) (applying the same Contamination Exclusion to bar coverage because "neither the government shutdown or closure order nor the presence of an infected person on Plaintiffs' premises would have occurred absent the spread of COVID-19"); *Pane Rustica, Inc. v. Greenwich Ins. Co.*, 2021 WL 1087219, at *2 (M.D. Fla. Mar. 22, 2021) ("Here, the virus is clearly the peril that precipitated the government orders. Neither order would have existed but for the existence of the virus, and the virus is the proximate cause of the orders. Accordingly, the virus is the cause of the loss, and [Plaintiff's] claims are excluded under the Policy. As confirmation of this interpretation, district courts around the country have almost universally dismissed with prejudice claims for loss due to COVID-19 shutdowns based on identical or substantially similar virus exclusions."); *Causeway Auto., LLC v. Zurich Am. Ins. Co.*, 2021 WL 486917 (D.N.J. Feb. 10, 2021) ("In that regard, the 'but for' cause of Plaintiffs' losses was COVID-19—the Executive Orders and the virus are so inextricably connected that it is undeniable that the Orders were issued because the virus."); *Edison Kennedy, LLC v. Scottsdale Ins. Co.*, 2021 WL 22314, at *8 (M.D. Fla. Jan. 4, 2021) ("The coronavirus is the peril that caused the government to enact orders restricting business. The virus and the orders are not two equal independent concurrent causes that worked together to cause the loss. The orders are wholly dependent on the virus. The orders, as they so state, were enacted to curtail the spread of the coronavirus and would not have been issued but for the pandemic. Because the orders were the direct result of, caused by, and arose from the prime excluded peril, the exclusion applies to deny coverage."); *Dotexamdr, PLLC v. Hartford Underwriters Ins. Co.*, 2021 WL 3409279, at *4 (D. Conn. Aug. 4, 2021) (applying Texas law) ("Plaintiff's allegations make clear that its claimed losses stem – at least indirectly – from the COVID-19 virus. The complaint

acknowledges that the stay-at-home orders were issued in response to the spread of the virus. The virus was in the chain of causation for Plaintiff's losses and the exclusion therefore precludes coverage."); *LJ New Haven LLC v. AmGUARD Ins. Co.*, 511 F. Supp. 3d 145, 152 (D. Conn. 2020) ("For starters, it cannot seriously be disputed — and Plaintiff does not dispute — that the virus is at least a 'but for' cause of its loss, i.e., that loss would not have been [sic] occurred had the virus never come into existence or infected human beings. And even if the principle of 'strictly construing' insurance policy exclusions counsels against reading the broad causation language in the virus exclusion to embrace every link in the causal chain, no matter how remote from the loss incurred by the insured (e.g., Plaintiff's decision to establish a restaurant in the first place), remoteness is not an issue here. The causal links represented by the virus and the Order are interlocking – even intertwined."); *Mena Catering, Inc v. Scottsdale Ins. Co.*, 512 F. Supp. 3d 1309, 1321–22 (S.D. Fla. 2021) (collecting cases).

In fact, the District of Massachusetts has already rejected the exact arguments put forth by the Amicus. In *Accents of Sterling, Inc. v. Ohio Security Ins. Co.*, 2021 WL 2117180, at * 3–4 (D. Mass. May 25, 2021), the plaintiff argued the policy's virus exclusion should not apply because "its loss is not solely caused by the virus itself, but also the Governor's Orders in response to the virus" and that the virus exclusion should not apply to a pandemic. The court rejected all three of these arguments; the same three arguments United Policyholders makes here. In so doing, the court found even if the virus exclusion could have been more specifically worded to include the term pandemic, this still does not render the unambiguous exclusion ambiguous or unclear. *Id*. at *4. Furthermore, even if the alleged losses were caused by the government orders, rather than the presence of the virus itself, the orders were issued to mitigate the spread of the COVID-19 virus, thus the exclusion unequivocally applies. *Id*.

The Amicus's reliance on *Urogynecology Specialist of Florida LLC v Sentinel Ins. Co.*, 489 F.Supp.3d 1297 (M.D. Fla. 2020) is not "instructive." Amicus Brief at 5. The court in *Urogynecology* denied a motion to dismiss because the entire policy was not before the court, not because of some flaw in the virus exclusion. *Id*. at 1302. Moreover, the holding in *Urogynecology* has been rejected within Florida and elsewhere. *See, e.g.*, *Ice House Pub, Inc. v. Westchester Surplus Lines Ins. Co.,* 2021 WL 3169151, at *2 (M.D. Fla. July 26, 2021) ("While [Plaintiff] ignored all that precedent, it did cite one Florida case. *Urogynecology Specialist of Florida LLC v Sentinel Ins. Co.*, 489 F. Supp. 3d 1297 (M.D. Fla. 2020). Yet the decision is easily set aside. There, Judge Conway denied a motion to dismiss in a COVID-19 insurance case….What's more, the parties did not provide all relevant policy forms, so the court could not resolve ambiguities in that exclusion."); *Dotexamdr, PLLC v. Hartford Underwriters Ins. Co*., 2021 WL 3409279 (D. Conn. Aug. 4, 2021) ("Plaintiff's reliance [on *Urogynecology*] is misplaced. The Urogynecology court declined to reach 'a decision on the merits of the plain language of the policy' because certain 'forms' referenced in the exclusion for loss caused by a 'virus' were not included in the policy or provided to the court."); *Cosmetic Laser, Inc. v. Twin City Fire Ins. Co*., 2021 WL 3569110 (D. Conn. Aug. 11, 2021) ("*Urogynecology*, which reached the opposite conclusion, has been repeatedly rejected by courts interpreting the same virus exclusion.") (collecting cases). Furthermore, arguing that the exclusion bars claims caused by a little virus, but not a large amount of the same virus, *i.e.*, a pandemic, is akin to arguing that an exclusion that bars loss by fire would apply to a small fire but not a large fire. *See Boxed Foods Co., LLC v. California Capital Ins. Co*., 497 F. Supp. 3d 516, 522–23 (N.D. Cal. 2020) ("[T]he word 'pandemic' describes a disease's geographic prevalence, but it does not replace disease as the harm-causing agent… Plaintiffs provide no support for their argument that insurers must specify the magnitude of an excluded

7

cause of loss in order to avoid ambiguity… The Virus Exclusion's alleged failure to specify how widespread a disease must become to trigger the exclusion does not demonstrate that the exclusion is ambiguous.") (internal citations omitted).  This argument defies logic.

Plaintiffs openly admit that their claims are premised on the alleged presence of the virus at its properties.  *See, e.g.*, ECF No. 1, ¶¶ 91–92 ("The presence of COVID-19 has caused and continues to cause actual physical loss and damage of the type insured under the Policy to insured property.  The presence of COVID-19 at Procaccianti Locations has therefore triggered coverage under the Policy."); ECF No. 17 at 30, n. 9 ("As shown in section III.A., supra, Procaccianti has pled a cognizable claim based on (1) actual presence of COVID-19….").  The Amicus cannot walk back Plaintiffs own factual assertions and now argue that a Contamination Exclusion that clearly and unambiguously applies to the presence of viruses does not apply because the alleged cause of loss is actually not the virus.

### III.     CONCLUSION

Defendant Zurich American Insurance Company respectfully requests this Court grant its Motion to Dismiss the Complaint of Plaintiffs Procaccianti Companies, Inc. and TPH Hotels & Resorts, Inc (ECF No. 10).

| | |
|---|---|
| Dated: August 31, 2021 | **DEFENDANT,** |
| | **ZURICH AMERICAN INSURANCE COMPANY,** |
| | By Its Attorneys, |
| | */s/ Daniel F. Sullivan* |
| | Daniel F. Sullivan (#8169) |
| | Wm Maxwell Daley (#9477) |
| | **ROBINSON & COLE LLP** |
| | One Financial Plaza, 14th Floor |
| | Providence, RI 02903 |
| | Tel: (401) 709-3300 |
| | Fax: (401) 709-3399 |
| | wdaley@rc.com |
| | dsullivan@rc.com |
| | **-and-** |
| | Michael Menapace (*pro hac vice*) |
| | **WIGGIN AND DANA LLP** |
| | 20 Church Street, 16th Floor |
| | Hartford, Connecticut 06103 |
| | Phone: 1 860 297 3700 |
| | Fax: 1 860 297 3799 |
| | **-and-** |
| | Susan M. Kennedy (*pro hac vice*) |
| | **WIGGIN AND DANA LLP** |
| | Two Liberty Place |
| | 50 S. 16th Street, Suite 2925 |
| | Philadelphia, Pennsylvania 19102 |
| | Phone: 1 215 988 8310 |
| | Fax: 1 215 988 8344 |
| | *Counsel for Defendant* |
| | *Zurich American Insurance Company* |

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing have been served via the Court's ECF system upon the following individual on the date set forth below:

Stephen M. Prignano
**MCINTYRE TATE LLP**
50 Park Row West, Suite 109
Providence, RI 02903
(401) 351-7700
(401) 331-6095
sprignanon@mcintyretate.com

Michael S. Levine (*pro hac vice*)
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue, NW
Washington, D.C. 20037-1701

Matthew T. Oliverio, Esquire
**OLIVERIO & MARCACCIO LLP**
55 Dorrance Street, Suite 400
Providence, RI 02903

Joseph D. Jean
Alexander D. Hardiman
**PILLSBURY WINTHROP SHAW PITTMAN LLC**
31 West 52nd Street
New York, NY 10019

Michael L. Huggins (*pro hac vice*)
**HUNTON ANDREWS KURTH LLP**
50 California Street, Suite 1700
San Francisco, California 94111

Christopher M. Pardo (*pro hac vice*)
Katharine A. Dennis(*pro hac vice*)
**HUNTON ANDREWS KURTH LLP**
60 State Street
Boston, MA 02109
Attorneys for Plaintiffs

Dated: August 31, 2021

                                        */s/ Daniel F. Sullivan*
                                           Daniel F. Sullivan