```
                     UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF RHODE ISLAND
```

```
_____
                                   )
PROCACCIANTI COMPANIES, INC.,      )
and TPG HOTELS & RESORTS, INC.,    )
                                   )
          Plaintiffs,              )
                                   )
     v.                            )    C.A. No. 20-512 WES
                                   )
ZURICH AMERICAN INSURANCE          )
COMPANY,                           )
                                   )
          Defendant.               )
_____)
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, District Judge.

Before the Court is Defendant Zurich American Insurance Company's Motion for Summary Judgment, ECF No. 62. This case is one of thousands nationwide seeking to recover under a commercial property insurance policy for business income losses arising from the COVID-19 pandemic. Joining the overwhelming majority of courts that have decided those cases, the Court concludes that Plaintiffs Procaccianti Companies, Inc., and TPG Hotels and Resorts, Inc., cannot sustain a claim for coverage. Accordingly, Defendant's Motion for Summary Judgment is GRANTED.

I.   Background

Plaintiff Procaccianti Companies, Inc., is a real estate transaction holding company that owns and operates hotels, and

Plaintiff TPG Hotels & Resorts, Inc., is a wholly owned subsidiary of Procaccianti and operates several hospitality brands. Pls.' Statement Disp. Facts ("SDF") ¶¶ 1-2, ECF No. 64. In 2020, upon the start of the COVID-19 pandemic in the United States, Plaintiffs were required by government order to limit or cease operations across all locations. Id. ¶¶ 5, 8. People infected with COVID-19 were present at Plaintiffs' locations in February 2020 prior to the closures. Id. ¶ 7. Plaintiffs allege $100 million in losses from the virus. Pls.' Mem. Opp. Mot. Summ. J. ("Pls.' Mem.") 11, ECF No. 63-1.

Defendant issued an insurance policy to Plaintiff with an effective date of April 1, 2019. SDF ¶ 10. Plaintiff seeks coverage for COVID-related losses under six provisions of the policy, each of which requires some variant of "direct physical loss of or damage to" the property to trigger coverage.[1] Compl. ¶¶ 94-106, ECF No. 1. The policy also contains exclusions that bar coverage in certain circumstances. One such exclusion, relevant to the present motion, is the contamination exclusion, which excludes "Contamination, and any cost due to Contamination

---

[1] Those provisions are: (1) the Gross Earnings provision, PXA 28-29, ECF No. 1-1; (2) the Extra Expense provision, id. at 30; (3) the Civil or Military Authority provision, id. at 35-36; (4) the Contingent Time Element provision, id. at 36; (5) the Ingress/Egress provision, id. at 39; and (6) the Protection and Preservation of Property provision, id. at 43. Compl. ¶¶ 94-106, ECF No. 1.

2

including the ability to use or occupy property or any cost of making property safe or suitable for use or occupancy." PXA 25, ECF No. 1-1. The policy defines "contamination" as "[a]ny condition of property due to the actual presence of any . . . virus [or] disease causing or illness causing agent." Id. at 62. Finally, the policy contains various amendatory endorsements that modify certain policy provisions, among which is the Louisiana Endorsement. The Louisiana Endorsement amends the contamination exclusion by deleting various terms, including "virus," from the definition of "contamination." Id. at 102.

II. Legal Standard

Summary judgment may be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; see IDC Props., Inc. v. Chicago Title Ins. Co., 42 F.4th 1, 7 (1st Cir. 2022). The movant bears the initial burden of establishing that there is no genuine issue of material fact, and, if that burden is met, the burden shifts to the non-movant who avoids summary judgment only by providing properly supported evidence of disputed material facts that require a trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986); Fed. Ins. Co. v. Russell L. Sisson & Sons, C.A. No. 18-441-WES, 2021 WL 4263624, at *1 (D.R.I. Sept. 20, 2021).

"[M]ere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247-48 (1986). "A dispute is 'genuine' if 'the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party.'" Cherkaoui v. City of Quincy, 877 F.3d 14, 23-24 (1st Cir. 2017) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). A material fact is one which has the "potential to affect the outcome of the suit under the applicable law." Id. at 23 (citation omitted). "A court will disregard conclusory allegations, improbable inferences, and unsupported speculation in determining whether a genuine factual dispute exists." Id. at 24 (citation omitted). The Rule plainly allows for the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

A federal court sitting in diversity is constrained to apply state substantive law. Shay v. Walters, 702 F.3d 76, 79 (1st Cir. 2012) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). The parties do not dispute that Rhode Island law applies. When the Rhode Island Supreme Court has not ruled on an issue, the

federal courts are to make an Erie guess that takes into account the precedents of other jurisdictions in predicting what path the state court would most likely travel. Mu v. Omni Hotels Mgmt. Corp., 882 F.3d 1, 9 (1st Cir. 2018); Liberty Mut. Ins. Co. v. Met. Life Ins. Co., 260 F.3d 54, 65 (1st Cir. 2001).

III. Discussion

Defendant contends that it is entitled to summary judgment because (1) the presence of the COVID-19 virus on property covered by the insurance policy is not, as a matter of law, "direct physical loss of or damage" to the property and (2) even if the first argument fails, the policy's contamination exclusion applies to bar coverage. Def.'s Mem. L. Supp. Mot. Summ. J. ("Def.'s Mem.") 6, ECF No. 62-1. The Court agrees with Defendant on both arguments.

a. Direct Physical Loss or Damage

To obtain coverage under the policy, Plaintiffs must demonstrate that they suffered "direct physical loss of or damage to Property . . . caused by a Covered Cause of Loss" at an insured location and that any claimed suspension of business activities was due to that direct physical loss or damage. PXA 28. Plaintiffs contend that the COVID-19 virus caused physical damage to their insured properties.

Relying on a case from the Massachusetts Supreme Judicial Court ("SJC"), the First Circuit adopted the definition of "direct

5

physical loss or damage" that is applicable here, concluding that "'direct physical loss or damage to' property requires some 'distinct, demonstrable, physical alteration of the property.'" Legal Sea Foods, LLC v. Strathmore Ins. Co., 36 F.4th 29, 34 (1st Cir. 2022) (quoting Verveine Corp. v. Strathmore Ins. Co., 184 N.E.3d 1266, 1275 (Mass. 2022)). Further, "property has not experienced physical loss or damage in the first place unless there needs to be an active repair or remediation measures to correct the claimed damage or the business must be moved to a new location." Id. (quoting Verveine Corp., 184 N.E.3d at 1275). Applying this definition, both the First Circuit and the SJC concluded that the COVID-19 virus does not cause "direct physical loss of or damage to" property as a matter of law. Id. at 34; Verveine Corp., 184 N.E.3d at 1269-70. Rather, COVID-19 causes the "[e]vanescent presence of a harmful airborne substance that will quickly dissipate on its own, or surface-level contamination that can be removed by simple cleaning, [and] does not physically alter or affect property." Legal Sea Foods, LLC, 36 F.4th at 34-35 (quoting Verveine Corp., 184 N.E.3d at 1276).[2]

---

[2] The First Circuit relied on the reasoning of Verveine in two additional cases: Am. Food Sys., Inc. v. Fireman's Fund Ins. Co., No. 21-1370, 2022 WL 2719641, at *1 (1st Cir. June 3, 2022), and SAS Int'l, Ltd. v. Gen. Star Indem. Co., 36 F.4th 23, 27 (1st Cir. 2022).

Courts in this jurisdiction have concluded the same, including Judge Stern of the Rhode Island Superior Court, who considered the question as a matter of first impression under Rhode Island law. In Josephson, LLC v. Affiliated FM Insurance Company, the policy at issue "insure[d] against costs incurred by the policyholder as a result of 'physical loss or damage' to insured property" and "financial business interruption losses 'as a direct result of physical loss or damage of the type insured.'" No. PC-2021-03708, 2022 WL 999134, at *1 (R.I. Super. Ct. Mar. 29, 2022). Judge Stern concluded that "COVID-19 is not capable of causing 'physical loss or damage' to property, full stop," reasoning that the virus cannot cause physical loss or damage to property "where no physical alteration or damage has occurred to the property." Id. at *12-*13. "Whether a doorknob, for example, poses a risk to human health is absolutely irrelevant to whether that doorknob is physically lost or damaged for purposes of insurance coverage." Id. at *13. Judge McConnell also reached this conclusion in an April 2022 decision denying a motion to dismiss. See M&N Food Serv. LLC v. Twin City Fire Ins. Co., No. 21-cv-206-JJM-LDA, 2022 WL 1137311, at *2 n.2 (D.R.I. Apr. 18, 2022) ("COVID-19 does not cause damage to property: it operates in the respiratory system of a human host.").

Further, numerous courts across the country have independently reached the same conclusion. See, e.g., Consol.

7

Rest. Ops., Inc. v. Westport Ins. Corp., 205 A.D.3d 76 (N.Y. App. Div. 2022) (no coverage as a matter of law where the virus was present on surfaces and in the air and alleged condition of property was dangerous for people); Gavrilides Mgmt. Co., LLC v. Michigan Ins. Co., 985 N.W.2d 919, 925 (Mich. Ct. App. Feb. 1, 2022) ("contamination to the environment within a building, such as the air," does not constitute physical loss of or damage to property); Sweet Berry Café, Inc. v. Soc'y Ins., Inc., 193 N.E.3d 962, 966 (Ill. App. Ct. 2022) (no damage to or loss of property where virus "rendered items of physical property unsafe and impaired its value and function and physically altered the air"), appeal denied, 197 N.E.3d 1126 (Table) (Ill. Sept. 28, 2022) ; Bridal Expressions LLC v. Owners Ins. Co., Case No. 21-3381, 2021 WL 5575753, at *2 (6th Cir. Nov. 30, 2021) (rejecting argument that "the presence of COVID-19[, which] altered the structure of the air, the physical space, and the property surfaces" amounted to physical alteration). Indeed, since the filing of the present motion, Defendant has alerted the Court to no fewer than fifteen supplemental authorities that have concluded the same in the intervening time. See ECF Nos. 73, 82, 85, 89, 91, 94, 96.

Plaintiffs mount two arguments in the face of this significant (and growing) body of caselaw. First, they contend that the context of many of these cases, and in particular Josephson, is distinguishable because here Plaintiffs will present scientific

8

evidence of the physical effects that the virus had on the insured properties and the physical alteration and damage that occurred as a result. In Josephson, the court concluded that the plaintiff, "like many of the plaintiffs in the cases cited herein, has not alleged any facts demonstrating that its insured locations have been physically or structurally altered." 2022 WL 999134 at *15. Plaintiffs contend that the case therefore leaves open the question of whether COVID-19 could be found to physically alter an insured property if scientific evidence was presented, which it intends to do in this case. That evidence, it asserts, will be provided by scientific experts who will opine that viral particles exhaled by humans settle on and adhere to surfaces, altering the character of the surface, and also proliferate in the air. Pl.'s Mem. 4-11. Plaintiffs further contend that because COVID-19 is continually reintroduced throughout the properties, routine cleaning and disinfecting are insufficient to eliminate the physical damage that the viral particles cause, and thus mitigation procedures, such as social distancing, masking, and improvements to airflow and filtration systems, are necessary to remediate the damage, and that these measures constitute "repairs" for the purposes of the insurance policy. Id. at 10-11.

This argument misses the mark, however, because the anticipated evidence does not establish any "distinct, demonstrable, physical alteration of the property." Legal Sea

9

Foods, 36 F.4th at 34 (quoting Verveine Corp., 184 N.E.3d at 1275). As explained by numerous other courts, the presence of the virus on the surface of property, which is, by its nature, ephemeral, dissipates on its own over time and has no lasting effect on the property, does not physically alter the property. Plaintiffs' assertion that the virus "altered the character of the surface," without pointing to any existing or anticipating evidence or specifying what that alteration is. does not suffice to defeat Defendants' motion. See Nieves v. Univ. of Puerto Rico, 7 F.3d 270, 276 n.9 (1st Cir. 1993) (factual assertions in motion papers insufficient to establish existence of genuine dispute of material fact).

Second, Plaintiffs point to two cases that have come out the other way. In Huntington Ingalls Industries, Inc. v. Ace American Insurance Company, 287 A.3d 515, 534 (Vt. 2022), the Vermont Supreme Court denied an insurer's motion for partial judgment on the pleadings, concluding that whether COVID-19 physically damages property is a factual issue requiring scientific evidence. And in Baylor College of Medicine v. XL Insurance Am., Inc., No. 2020-53316 (Harris Cnty. Dist. Ct. Sept. 21, 2022) (docketed in this case at ECF No. 63-4), a jury found that COVID-19 caused physical loss and damage and over $48 million in resulting business interruption losses. However, as Defendant points out, these cases are specific to their jurisdictions and, for the most part, have

not been applied outside of the specific contexts of Vermont or Texas law. See, e.g., Good George, LLC v. Cincinnati Ins. Co., Case No. 3:20-cv-1705-AR LEAD, 2022 WL 16920817, at *2 (D. Or. Nov. 14, 2022) (Huntington Ingalls "does not dictate a departure from case law in the District of Oregon because it turns on Vermont's extremely liberal notice pleading standard." (citation omitted)); Carilion Clinic v. Am. Guar. & Liab. Ins. Co., Case No. 7:21-cv-00168, 2022 WL 16973256, at *4 (W.D. Va. Nov. 16, 2022) (refusing to follow Huntington Ingalls "which the court does not find persuasive"); Neuro-Communication Servs., Inc. v. Cincinnati Ins. Co., No. 2021-0130, 2022 WL 17573883, at *7 (Ohio Dec. 12, 2022) (refusing to follow Huntington Ingalls, which is inconsistent "with the clear trend in the law in other jurisdictions"); Carilion Clinic, 2022 WL 16973256 at *4 n.2 ("the Baylor College of Medicine jury verdict adds nothing of substantive value to the legal analysis."). Thus, because neither result is applicable to the present case, summary judgment in favor of Defendant is appropriate.

    b. Contamination Exclusion and Louisiana Endorsement

The policy contains an exclusion for loss caused by contamination, which is defined as "[a]ny condition of property due to the actual presence of any . . . virus [or] disease causing or illness causing agent." PXA 62. Courts that have addressed similar contamination exclusions have concluded that they

11

extinguish any potential for coverage of losses related to COVID-19. See Josephson, LLC, 2022 WL 999134 at *10 ("Contamination Exclusion unambiguously applies to bar [the insured]'s claim."); Palomar Health v. Am. Guarantee & Liab. Ins. Co., No. 21-56073, 2022 WL 3006356, at *1 (9th Cir. July 28, 2022); Firebirds Int'l., LLC v Zurich Am. Ins. Co., No. 1-21-0558, 2022 WL 1604438, at *6–7 (Ill. App. Ct. 1st Dist. 2022); AC Ocean Walk, LLC v. Am. Guarantee & Liab. Ins. Co., No. A-1824-21, 2022 WL 2254864, at *14-16 (N.J. Super. Ct. App. Div. June 23, 2022); Greenwood Racing Inc. v. Am. Guarantee & Liab. Ins. Co., No. 21-1682, 2022 WL 4133295, at *5 (E.D. Pa. Sept. 12, 2022); Westport Cap. Partners LLC v Am. Guarantee & Liab. Ins. Co., No. X03-CV-21-6150009-S, 2022 WL 2303763, at *6–8 (Conn. Super. Ct. June 27, 2022); Boscov's Dep't Store v Am. Guar. & Liab. Ins. Co., 546 F. Supp. 3d 354, 369 (E.D. Pa. 2021); Manhattan Partners, LLC, v Am. Guar. & Liab. Ins. Co., No. 20-14342, 2021 WL 1016113, at *2 n.3 (D.N.J. 2021); Lindenwood Female Coll. v. Zurich Am. Ins. Co., 569 F. Supp. 3d 970, 976 (E.D. Mo. 2021). Plaintiffs argue, however, that the policy's Louisiana Endorsement, which deletes the terms "pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent" from the definition of contaminants applies here and thus the contamination exclusion does not bar coverage.

Other courts have held that application of the Louisiana Endorsement is limited to property in Louisiana. See Greenwood

Racing Inc. 2022 WL 4133295 at *5; AECOM v. Zurich Am. Ins. Co., No. LA CV21-00237, 2021 WL 6425546, at *10 (C.D. Cal. Dec. 1, 2021); Carilion Clinic v. Am. Guarantee & Liab. Ins. Co., 583 F. Supp. 3d 715, 734-35 (W.D. Va. 2022); United States of Aritzia, Inc. v Zurich Am. Ins. Co., No. 21 CH 1231, 2021 WL 6776241, at *6 (Ill. Cir. Ct. Nov. 10, 2021); Billings Clinic v. Am. Guarantee & Liab. Ins. Co., No. CV 21-32-BLG-SPW-TJC, 2022 WL 773207, at *7 (D. Mont. Feb. 22, 2022). However, Plaintiffs argue that, although the title of the provision is "Louisiana Endorsement," nothing in the text of the endorsement limits its application to Louisiana. In addition, the policy itself states that "[t]he titles of the various paragraphs and endorsements are solely for reference and shall not in any way affect the provisions to which they relate," and titles of other provisions that are geographically limited state as much specifically (e.g., "This endorsement changes the policy and applies to those risks in Connecticut").

Applying the Louisiana Endorsement to Plaintiffs' policy would require ignoring fundamental principles of contract interpretation and would create significant ambiguity in the insurance policy. First, with "guidance from the familiar principle that a court must favor interpretations which give meaning and effect to every part of a contract and reject those which reduce words to mere surplusage" the Court concludes that the term "Louisiana" must be interpreted as a geographic

13

restriction on the endorsement, since any alternative interpretation would render the term meaningless. Systemized of New England, Inc. v. SCM, Inc., 732 F.2d 1030, 1034 (1st Cir. 1984); see Valley Health Sys., Inc., No. BER-L-1907-21, 2021 WL 4958349, at *9 ("The plain reading of the Policy demonstrates the difference between endorsements of general application and those with state-specific application . . . The [state] reference is an essential and substantive term of the endorsement.  The Court may not adopt an interpretation that would render the 'Louisiana' designation meaningless."). Second, the Court notes that applying the Louisiana Endorsement without geographic restriction would require the same application of each of the other thirty-one state-specific endorsements, which would result in irreconcilable conflicts. Compare, e.g., PXA 81-89 (Florida Endorsement permitting legal action against the company within five years from the date of loss) with PXA 90 (Georgia Endorsement permitting legal action within two years), and PXA 91-93 (Illinois Endorsement permitting within one year).  Applying the geographic limitations to these endorsements avoids this problem and fully harmonizes the entire policy. See Derderian v. Essex Ins. Co., 44 A.3d 122, 128 (R.I. 2012) (court must "refrain from engaging in mental gymnastics or from stretching the imagination to read ambiguity into a policy

14

where none is present" (quotation omitted).[3]  Thus, because the Louisiana Endorsement does not apply, the contamination exclusion bars coverage of Plaintiffs' claims, providing an independent basis for granting Defendant's motion for summary judgment.

---

[3] Following oral argument in this matter, Plaintiff directed the Court to two supplemental authorities pertaining to this issue. In Regan Heating and Air Conditioning, Inc. v. Arbella Protection Insurance Co., the Rhode Island Supreme Court considered an insurance policy that had a total endorsement and a limited endorsement modifying the same language.  287 A.3d 502, 508 (R.I. 2023).  Plaintiffs argue that this case supports their construction of the Louisiana Endorsement because the court held that endorsements should be read literally and applied as written despite argument that the endorsements were in conflict.  See id. However, the court ultimately concluded that the two endorsements "are not in conflict nor are they reasonably susceptible of different constructions," and thus "the total endorsement and the limited endorsement do not render the policy ambiguous."  Id. Plaintiffs also point to PHI Group, Inc. v. Zurich American Insurance Co., in which the Fifth Circuit addressed a policy nearly identical to that in this case.  58 F.4th 838, 840 (5th Cir. 2023). Plaintiff contends that the court in that case interpreted the Louisiana Endorsement to not have a geographic restriction. However, the holding of this case rested on whether COVID-19 caused direct physical loss or damage to the insured property (which the court concluded it did not), and only addressed the Louisiana Endorsement briefly in a footnote, explaining that it "changes the definition of contamination."  Id. at 840 n.1.  However, because the property at issue in that case was at least partially located in Louisiana, the court did not opine as to whether the endorsement would apply to property in other states.  Therefore, any interpretation of the Louisiana Endorsement in that case is inapplicable here.

15

IV.  Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF No. 62, is GRANTED.

IT IS SO ORDERED.

/s/ William E. Smith
_____
William E. Smith
District Judge
Date:  May 18, 2023